**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**Case No. 18-80558-CV-MIDDLEBROOKS/BRANNON**

GARY H. LEBBIN, et al.,

      Plaintiffs,

v.

TRANSAMERICA LIFE INSURANCE
COMPANY,

      Defendant.

---

**DEFENDANT TRANSAMERICA LIFE INSURANCE COMPANY'S**
**MOTION TO DISMISS PLAINTIFFS' COMPLAINT**
**AND SUPPORTING MEMORANDUM OF LAW**

---

Markham R. Leventhal
Richard J. Ovelmen
Julianna Thomas McCabe
CARLTON FIELDS JORDEN BURT, P.A.
Miami Tower, Suite 4200
100 S.E. Second Street
Miami, Florida 33131
Telephone:  (305) 530-0050
Facsimile:  (305) 530-0055

*Counsel for Defendant*
*Transamerica Life Insurance Company*

## <u>TABLE OF CONTENTS</u>

<u>*Page*</u>

TABLE OF AUTHORITIES ................................................................................................. iii

INTRODUCTION .............................................................................................................. 1

SUMMARY OF PLAINTIFFS' ALLEGATIONS ............................................................. 2

      A.    The Parties ............................................................................................ 2

      B.    Allegations Regarding The Sales Process............................................ 2

      C.    The Policies........................................................................................... 3

      D.    The Maturity And Termination Of The Policies................................... 4

PROCEDURAL HISTORY................................................................................................. 5

LEGAL STANDARD.......................................................................................................... 6

      A.    Rule 12(b)(6)........................................................................................ 6

      B.    Rule 9(b) .............................................................................................. 7

CHOICE OF LAW .............................................................................................................. 8

ARGUMENT........................................................................................................................ 9

I.      PLAINTIFFS' CLAIMS ARE BARRED BY THE RELEVANT THREE YEAR STATUTE OF LIMITATIONS ............................................................ 9

II.     PLAINTIFFS' FRAUD AND NEGLIGENT MISREPRESENTATION CLAIMS ARE BARRED BY FLORIDA'S TWELVE YEAR STATUTE OF REPOSE.............. 11

III.    COUNT ONE FOR BREACH OF CONTRACT SHOULD BE DISMISSED BECAUSE THE POLICIES MATURED AND TERMINATED CONSISTENT WITH THE EXPRESS CONTRACT TERMS ............................................... 12

IV.    COUNTS TWO AND THREE SHOULD BE DISMISSED FOR FAILURE TO PLEAD PLAINTIFFS' FRAUD AND NEGLIGENT MISREPRESENTATION CLAIMS WITH PARTICULARITY AS REQUIRED BY RULE 9(b) .......................... 14

V.     COUNTS TWO AND THREE SHOULD BE DISMISSED BECAUSE PLAINTIFFS CANNOT ESTABLISH REASONABLE RELIANCE........................... 15

**TABLE OF CONTENTS**
(continued)

*Page*

VI.     COUNT FOUR FOR VIOLATIONS OF THE MARYLAND CONSUMER
        PROTECTION ACT FAILS................................................................................. 16

VII.    COUNT FIVE FOR UNJUST ENRICHMENT MUST BE DISMISSED
        BECAUSE PLAINTIFFS' CLAIMS ARE GOVERNED BY THE TERMS OF
        AN EXPRESS CONTRACT AND PLAINTIFFS HAVE AN ADEQUATE
        REMEDY AT LAW ......................................................................................... 18

VIII.   COUNTS SIX THROUGH NINE SHOULD BE DISMISSED BECAUSE
        PLAINTIFFS ARE NOT ENTITLED TO THE DECLARATION THEY SEEK
        NOR ARE THEY ENTITLED TO THE EQUITABLE REMEDIES OF
        REFORMATION OR RESCISSION ................................................................. 19

CONCLUSION................................................................................................................... 20

CERTIFICATE OF SERVICE ......................................................................................... 22

# <u>TABLE OF AUTHORITIES</u>

*Page*

**Cases**

*Aetna Life Insurance Co. v. Haworth*,
    300 U.S. 227 (1937) ........................................................................................20

*Allegheny Casualty Co. v. Archer-Western/Demaria Joint Venture III*,
    2014 WL 4162787 (M.D. Fla. Aug. 21, 2014) ......................................................19

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..........................................................................................6

*Attorney General of Maryland v. Dickson*,
    717 F. Supp. 1090 (D. Md. 1989) ......................................................................17

*Becker v. Harken, Inc.*,
    2007 WL 473089 (S.D. Fla. Feb. 8, 2007) ...........................................................11

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ..........................................................................................6

*Benoay v. E.F. Hutton & Co.*,
    699 F. Supp. 1523 (S.D. Fla. 1988) ....................................................................15

*Bradman v. Mental Health Network, Inc.*,
    2008 WL 5110525 (S.D. Fla. Dec. 2, 2008) ........................................................14

*Branch Banking & Trust Co. v. Appraisalfirst, Inc.*,
    2010 WL 11596299 (S.D. Fla. July 7, 2010) ......................................................12

*Brooks v. Blue Cross & Blue Shield of Florida*,
    116 F.3d at 1371 ...............................................................................................7

*Burger King Corp. v. Weaver*,
    169 F.3d 1310 (11th Cir. 1999) ........................................................................13

*Caplen v. Guardian Life Insurance Co. of America*,
    1996 WL 1057652 (S.D. Fla. Oct. 22, 1996) ......................................................12

*Centurion Air Cargo, Inc. v. United Parcel Service Co.*,
    420 F.3d 1146 (11th Cir. 2005) ........................................................................13

*Collier v. Boney*,
    525 So. 2d 971 (Fla. 1st DCA 1988) ..................................................................19

**TABLE OF AUTHORITIES**
(continued)

*Page*

*Consumer Protection Division v. Outdoor World Corp.*,
603 A.2d 1376 (Md. Ct. Spec. App. 1992) ...............................................17

*Crenshaw v. Lister*,
556 F.3d 1283 (11th Cir. 2009) .................................................................7

*Cross v. Primerica Life Insurance Corp.*,
2014 WL 12527701 (N.D. Fla. Feb. 11, 2014)...........................................12

*Doughty v. Prettyman*,
148 A.2d 438 (Md. 1959) ...........................................................................8

*Dye v. United Services Automobile Association*,
89 F. Supp. 3d 1332 n.4 (S.D. Fla. 2015) ...............................................18

*Eclipse Medical, Inc. v. American Hydro-Surgical Instruments, Inc.*,
262 F. Supp. 2d 1334 (S.D. Fla. 1999) ....................................................15

*Elyazidi v. Suntrust Bank*,
780 F.3d 227 (4th Cir. 2015) ...................................................................17

*Financial Security Assurance, Inc. v. Stephens, Inc.*,
500 F.3d 1276 (11th Cir. 2007) ...............................................................6

*Gagliardi v. TJCV Land Trust*,
889 F.3d 728 (11th Cir. 2018) .................................................................20

*Garcia v. Santa Maria Resort, Inc.*,
528 F. Supp. 2d 1283 (S.D. Fla. 2007) ....................................................15

*Gentry v. Harborage Cottages-Stuart LLP*,
2008 WL 1803637 (S.D. Fla. Apr. 21, 2008) ...........................................12

*George v. Massachusetts Mutual Life Insurance Co.*,
2018 WL 656436 (D. Md. Feb. 1, 2018) ...................................................10

*Gladney v. American Western Home Insurance Co.*,
2016 WL 1366029 (D. Md. Apr. 6, 2016)..................................................16

*Greene Tree Home Owners Association v. Greene Tree Associates*,
749 A.2d 806 (Md. 2000) ..........................................................................10

*Griffin Industries, Inc. v. Irvin*,
496 F.3d 1189 (11th Cir. 2007) ...............................................................7

**TABLE OF AUTHORITIES**

(continued)

*Page*

*Hospital Corporation of America v. Florida Medical Center, Inc.*,
    710 So. 2d 573 (Fla. 4th DCA 1998) ..................................................13

*Insurance Concepts & Design, Inc. v. Healthplan Services, Inc.*,
    785 So. 2d 1232 (Fla. 4th DCA 2001) ................................................13

*Jacobs v. Unum Group Corp.*,
    2017 WL 3726477 (M.D. Fla. June 9, 2017) ........................................11

*James Ventures, L.P. v. Timco Aviation Services, Inc.*,
    315 F. App'x 885 (11th Cir. 2009) ........................................................8

*Joseph v. Bernstein*,
    2014 WL 12600805 (S.D. Fla. 2014) ...................................................14

*Jovine v. Abbott Laboratories, Inc.*,
    795 F. Supp. 2d 1331 (S.D. Fla. 2011) ................................................19

*Kolodziej v. Mason*,
    996 F. Supp. 2d 1237 (M.D. Fla. 2014) .................................................8

*Licul v. Volkswagen Group of America, Inc.*,
    2013 WL 6328734 (S.D. Fla. Dec. 5, 2013) ....................................18, 19

*Montrose Educational Services, Inc. v. Sylvan Learning Systems, Inc.*,
    2007 WL 979923 (D. Md. Mar. 30, 2007) ............................................10

*Mt. Hawley Insurance Co. v. Miami River Port Terminal, LLC*,
    228 F. Supp. 3d 1313 (S.D. Fla. 2017) ................................................20

*Niagara Fire Insurance Co. v. Allied Electrical Co.*,
    319 So. 2d 594 (Fla. 3d DCA 1975) ....................................................20

*PDF Foods, LLC v. Naked Juice Co. of Glendora, Inc.*,
    2008 WL 11331990 (S.D. Fla. Apr. 29, 2008) .....................................18

*Poffenberger v. Risser*,
    431 A.2d 677 (Md. 1981) ....................................................................10

*Pottratz v. Davis*,
    588 F. Supp. 949 (D. Md. 1984) ............................................................8

*President & Directors of Georgetown College v. Madden*,
    505 F. Supp. 557 (D. Md. 1980) ............................................................8

## TABLE OF AUTHORITIES
### (continued)

*Page*

*Quality Inns International, Inc. v. Tampa Motel Associates, Ltd.*,
    154 F.R.D. 283 (M.D. Fla. 1994).................................................................................8

*Ruddy v. Equitable Life Assurance Society*,
    2000 WL 964770 (D. Md. June 20, 2000)................................................................11

*Sanctuary Surgical Centre, Inc. v. Aetna Inc.*,
    546 F. App'x 846 (11th Cir. 2013) ............................................................................7

*Schaeffer v. Anne Arundel County*,
    656 A.2d 751 (Md. 1995) .........................................................................................10

*Servicios-Expoarma, C.A. v. Industrial Maritime Carriers, Inc.*,
    135 F.3d 984 (5th Cir. 1998) ...................................................................................11

*Silver v. Countrywide Home Loans, Inc.*,
    760 F. Supp. 2d 1330 (S.D. Fla. 2011) ...................................................................16

*Souran v. Travelers Insurance Co.*,
    982 F.2d 1497 (11th Cir. 1993) ...............................................................................11

*Spaulding v. Wells Fargo Bank, N.A.*,
    714 F.3d 769 (4th Cir. 2013) ...................................................................................17

*Speaker v. Department of Health & Human Services*,
    623 F.3d 1371 (11th Cir. 2010) .................................................................................7

*Stallworth v. Hartford Insurance Co.*,
    2006 WL 2711597 (N.D. Fla. Sept. 19, 2006)........................................................13

*Steinhauser v. Steinhauser*,
    2018 WL 1100850 (S.D. Fla. Jan. 24, 2018) ..........................................................16

*Surety Bank v. Dunbar Armored, Inc.*,
    2015 WL 845590 (S.D. Fla. Feb. 25, 2015) ...........................................................20

*Tilton v. Playboy Entertainment Group, Inc.*,
    2007 WL 80858 (M.D. Fla. Jan 8, 2007).........................................................18, 19

*United States ex rel. Clausen v. Laboratory Corp. of America, Inc.*,
    290 F.3d 1301 (11th Cir. 2002) .................................................................................8

*Vazquez v. General Motors, LLC*,
    2018 WL 447644 (S.D. Fla. Jan. 16, 2008) .....................................................18, 19

# TABLE OF AUTHORITIES
(continued)

*Page*

*Vibe Micro, Inc. v. Shabanets*,
   878 F.3d 1291 (11th Cir. 2018) ...........................................................................14

*Zarella v. Pacific Life Insurance Co.*,
   755 F. Supp. 2d 1218 (S.D. Fla. 2010) ...............................................................18

*Zarrella v. Pacific Life Insurance Co.*,
   755 F. Supp. 2d 1231 (S.D. Fla. 2011) ...............................................................12

**Statutes**

28 U.S.C. § 1404(a) .................................................................................................5, 8

Florida Statute § 95.031(2)(a) ....................................................................................11

Maryland Code, Commercial Law, § 13-101 *et seq.* ..................................................16

Maryland Code, Commercial Law, § 13-102(b) .........................................................16

Maryland Code, Commercial Law, § 13-104(1) .........................................................16

Maryland Code, Commercial Law, § 13-408(b) .........................................................17

Maryland Code, Courts and Judicial Proceedings, § 5-101 ........................................10

**Rules**

Federal Rule of Civil Procedure 8(a)(2) ......................................................................6

Federal Rules of Civil Procedure 9(b) ..........................................................1, 7, 14, 17

Federal Rules of Civil Procedure 12(b)(6)........................................................1, 6, 7

U.S. District Court, Southern District of Florida Local Rule 7.1 .................................1

Pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure and S.D. Fla. L.R. 7.1, defendant Transamerica Life Insurance Company ("Transamerica") respectfully submits this Motion to Dismiss Plaintiffs' Complaint and Supporting Memorandum of Law. For the reasons discussed below, plaintiffs' Complaint (DE 1) (the "Complaint," cited as "Compl.") should be dismissed in its entirety with prejudice.

## **INTRODUCTION**

In 1990 and 1991, Gary and Bernice Lebbin, husband and wife (the "Lebbins"), purchased two life insurance policies (the "Policies") from a predecessor of Transamerica.[1] The Policies jointly insured the lives of the Lebbins and provided life insurance until age 100. The Policies promised to pay the death benefits to the beneficiary if both insureds die before reaching age 100. Specifically, that Policies state on their first page that: "While the policy is in force, [Transamerica] will pay the death benefit to the beneficiary *if both Joint Insureds die* before the policy anniversary nearest Joint Equal Age 100…." Policies at p. 1 (emphasis added). At the bottom of the first page, the Policies state in bold font: "**Death Benefit Payable at Death of Survivor Before Joint Equal Age 100**." *Id.*[2] The Policies repeat the same terms on the second page of the Policies under the caption "POLICY SUMMARY."[3] If one of the insureds survives until age 100, the Policies expressly state that they will terminate, and Transamerica "will pay the net cash value, if any, to the owner." Policies at p. 1; *see id.* at 15 ("Termination of Insurance").

---

[1] Duplicate copies of the Policies are attached hereto as Exhibits A and B.

[2] Joint Equal Age is defined in the Policy to reflect "a risk that would be equivalent of two people of the same age, class of risk and smoking status." *Id*. at 3. The Policies reflect that the Joint Equal Age of the Lebbins was 73 when they purchased the first policy and 74 when they purchased the second. *See* Policies at 2.

[3] Policies at p. 1A ("We will pay the death benefit to the Beneficiary if both Joint Insureds die before the policy anniversary nearest Joint Equal Age 100.").

Bernice Lebbin passed away in 2015. Plaintiff Gary Lebbin, however, reached 100 years of age on September 6, 2017. Consequently, each of the Policies terminated in 2017 on its policy anniversary date. Policies at p. 15. Upon termination, Transamerica paid the net cash value of each of the Policies to the owner of the Policies—the Lebbin-Spector Family Trust (the "Trust"). Despite knowing for 27 years that the Policies would mature and terminate if Mr. or Mrs. Lebbin reached 100 years of age, in this lawsuit, the plaintiffs seek to re-write the Policies so that they remain in force indefinitely. Plaintiffs allege that "Transamerica's termination of the Policies is inequitable, unconscionable and in direct breach of its contractual obligations and representations to Plaintiffs." Compl. ¶ 4. Plaintiffs complain about the premiums collected by Transamerica for the Policies while they were in force, disregarding that Transamerica provided $3.2 million dollars of life insurance coverage for over 25 years beginning when the Lebbins were 74 years of age.

For the reasons set forth below, there is no merit to any of plaintiffs' claims, and the Complaint should be dismissed with prejudice.

## SUMMARY OF PLAINTIFFS' ALLEGATIONS

### A.    The Parties

Plaintiff Gary H. Lebbin was the purchaser and an insured under the Policies. Compl. ¶¶ 22, 25. Plaintiffs Roger M. Lebbin and Carole Sue Lebbin are the Lebbins' adult children and, according to the Complaint, are trustees of the Trust that owned the Policies. Compl. ¶ 24. The sole defendant in this case is Transamerica. The Policies were issued by Transamerica Occidental Life Insurance Company, which merged into Transamerica effective October 1, 2008. *See* Policies, Merger Endorsement.

### B.    Allegations Regarding The Sales Process

Plaintiffs allege that "in the early 1990s," the Lebbins were "concerned with developing

an appropriate tax and estate planning strategy" for their heirs.  Compl. ¶ 19.  The Lebbins were allegedly approached by Jack Kaye (a Transamerica agent in Florida), who marketed the Policies to them.  *Id.* ¶ 21.  Plaintiffs allege that Mr. Kaye presented the Policies as providing insurance "for life, so long as they paid the necessary premiums to keep the policies in force."  *Id*. ¶ 21.  Plaintiffs also allege that Policies were "marketed, sold and represented" as insurance that would "guarantee their joint estate income tax-free liquid assets" that they could use to pay estate taxes, thus leaving "additional funds in their estate to provide for the education of their grandchildren and for the health and well-being of their children."  *Id.* ¶ 22.[4]  And plaintiffs allege the Policies "were marketed, sold and represented to Plaintiffs as a vehicle to allow the cash value earnings to grow tax-deferred, with no tax due on them until they were withdrawn," and that plaintiffs would control when cash was withdrawn.  *Id.* ¶ 23.  Finally, plaintiffs allege that Kaye suggested "second-to-die" policies would be "more suitable for the Lebbins' needs" than separate policies, because they were "less expensive" and, thus, "'a better deal.'"  *Id.*  ¶ 28.

## C.    The Policies

On July 9, 1990, the Lebbins purchased Policy No. 92324057 (Exh. A; the "1990 Policy"), a Joint and Last Survivor Adjustable Life Insurance Policy with a face amount of $2,000,000 (the "1990 Policy").  *Id*. at 1.  The Policy Data page reflects that the Joint Insureds were Gary and Bernice Lebbin, the Policy Date was July 9, 1990, the Lebbins' Joint Equal Age was 73, and the Owner was the "Lebbin-Spector Family Trust June 25, 1990."  *Id.* at 2.  The Application which is "attached and is a part of the policy" (*see id*. at 14) identifies the Trust as the Beneficiary.  *Id*. at Application, p. 2.  Plaintiffs allege that the Trust was formed to hold the Policies.  Compl. ¶ 24.

---

[4]  The Complaint does not allege the time, place, manner or participants of the alleged marketing representations.  Compl. ¶¶ 22-23.

On December 20, 1991, the Lebbins purchased a similar Policy No. 92387187, with a face amount of $1,200,000 (Exh. B; the "1991 Policy"), which is also a Joint and Last Survivor Adjustable Life Insurance Policy. *Id*. at 1. The Application for the 1991 Policy names the Lebbins' children as the trustees of the Trust, and again identifies the Trust as the Beneficiary. *Id*. at Application, p. 2. Plaintiffs concede that both of the Policies were delivered. Compl. ¶ 26. The Policies gave the Lebbins a "Right to Examine and Return" the Policies within 10 days. Policies at 1. The Lebbins do not allege that they attempted to return the Policies. Rather, the Lebbins kept the Policies, and plaintiffs allege that they have paid "all premiums necessary to keep the Policies in force." Compl. ¶ 33.

### D.     The Maturity And Termination Of The Policies

The 1990 Policy and the 1991 Policy have identical provisions which state that death benefits are only payable if both insureds die before the policy anniversary in the year that they reach the age of 100. The first page of both Policies states:

> While the policy is in force, Transamerica Occidental Life Insurance Company will pay the death benefit to the beneficiary if both Joint Insureds die before the policy anniversary nearest Joint Equal Age 100, or will pay the net cash value, if any, to the owner ***on the policy anniversary nearest Joint Equal Age 100 if both or either Joint Insured is living on that date.***

Exhs. A & B (Policies) at 1 (emphasis supplied). On the bottom half of the page, in bold initial capitalization, the Policies restate the "Age 100" provisions: "**Death Benefit Payable at Death of Survivor Before Joint Equal Age 100 Net Cash Value, If Any, Payable at Policy Anniversary Nearest Joint Equal Age 100**." *Id*. The next page of the Policies states:

**READ YOUR POLICY CAREFULLY**

**POLICY SUMMARY**

We will pay the death benefit to the Beneficiary if both Joint Insureds die before the policy anniversary nearest Joint Equal Age 100.

You must pay at least the minimum premium per year during the first 5 policy years or the policy will lapse. After that, you may vary the amount of premiums

-4-

> and how often you pay them, within certain limits.  Generally, you may pay premiums as long as one of the Insureds is living.  ***If both or either Joint Insured is living at the policy anniversary nearest Joint Equal Age 100, we will pay the net cash value, if any, to you.***

*Id.* at 1A (emphasis supplied).  The Policies also include a "Termination of Insurance" provision which states:  "The policy will terminate at the earliest of the following dates:  1.  the date of surrender; or 2.  ***the policy anniversary nearest Joint Equal Age 100***; or . . . ."  *Id.* at 15 (emphasis added).  The Policies do not allow the agent to vary their terms, providing that "[o]nly our President or a Vice President together with our Corporate Secretary have the authority to make any change in the policy."  *Id.* at 14.

On January 6, 2015, Bernice Lebbin passed away.  Compl. ¶ 17.  Plaintiff Gary Lebbin, however, is still alive.  The policy anniversary date nearest Joint Equal Age 100 for the 1990 Policy was July 9, 2017.  *See* 1990 Policy at 2 (noting Policy Date of July 9, 1990 and Joint Equal Age at issue of 73).  The policy anniversary date nearest Joint Equal Age 100 for the 1991 Policy was December 20, 2017.  *See* 1991 Policy at 2 (noting Policy Date of December 20, 1991 and Joint Equal Age at issue of 74).  Both Policies have matured and terminated and Transamerica has paid the net cash value to the owner, the Trust.[5]

## PROCEDURAL HISTORY

Plaintiffs commenced litigation against Transamerica by filing their Complaint in the United States District Court for the District of Maryland on July 6, 2017.  DE 1.  On October 2, 2017, pursuant to 28 U.S.C. § 1404(a), Transamerica filed its Motion to Transfer (DE 19) this action to the Southern District of Florida for the convenience of the parties and witnesses and in

---

[5] This lawsuit was filed just days before the maturity date of the 1990 Policy, and approximately five months before the 1991 Policy matured.  The Complaint alleges that Transamerica "will terminate the Policies."  Compl. ¶ 60.  The Policies have now terminated.

the interest of justice.  Motion to Transfer (DE 19) at 1.[6]  On April 30, 2018, the Maryland court

granted the Motion to Transfer and ordered the case transferred to this Court.  On May 20, 2018,

this Court issued an Order (DE 37) establishing a briefing schedule for this Motion to Dismiss.

## LEGAL STANDARD

### A.      Rule 12(b)(6)

A motion to dismiss tests whether the plaintiff has properly stated a claim upon which

relief can be granted.  Fed. R. Civ. P. 12(b)(6).  While the Court must accept well-pleaded

factual allegations and draw reasonable inferences in favor of the plaintiff, the Court need not

accept the truth of legal conclusions merely because they are cast in the form of factual

allegations.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).  Rule 8

"does not unlock the doors of discovery for a plaintiff armed with nothing more than

conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).  The "complaint must include

'[f]actual allegations [adequate] to raise a right to relief above the speculative level.'"  *Fin. Sec.*

*Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282 (11th Cir. 2007) (quoting *Twombly*, 550

U.S. at 555).  "A claim has facial plausibility when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged."  *Iqbal*, 556 U.S. at 678.  "[W]here the well-pleaded facts do not permit the court to

infer more than the mere possibility of misconduct, the complaint has alleged – but it has not

'show[n]' – 'that the pleader is entitled to relief.'"  *Id.* at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Here, because the Complaint repeatedly refers to the Policies, which are the contracts

---

[6] In support of its Motion to Transfer, Transamerica submitted evidence, including the declarations of the selling agent Jack Kaye (DE 19-1), the most recent servicing agent Lisa Fleming (DE 19-2), and a Transamerica corporate representative Connie H. Whitlock (DE 19-3) (with exhibits).  Plaintiffs submitted the affidavits of the Lebbin children and trustees of the Trust, Roger M. Lebbin (DE 20-1), and Carole Sue Lebbin (DE 20-2).

upon which the Plaintiffs' claims are based, the Policies are properly before the Court in deciding the motion to dismiss. *See, e.g., Speaker v. Dep't of Health & Human Servs.*, 623 F.3d 1371, 1379 (11th Cir. 2010) (court may consider documents attached to the defendant's motion to dismiss if the documents are referenced in the plaintiff's complaint or central to the plaintiff's claims).[7]  In turn, the Court may disregard allegations that are contradicted by the Policies, which control over the allegations in the event of a conflict. *See, e.g., Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009) ("[W]hen the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern.") (quoting *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007)); *Sanctuary Surgical Centre, Inc. v. Aetna Inc.*, 546 F. App'x 846, 853 (11th Cir. 2013) (applying *Griffin* and affirming district court dismissal of all claims under Fed. R. Civ. P. 12(b)(6)).

### B.  Rule 9(b)

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  To meet this standard, plaintiff must allege:

(1)  precisely what statements were made in what documents or oral representations or what omissions were made, and

(2)  the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and

(3)  the content of such statements and the manner in which they misled the plaintiff; and

(4)  what the defendants "obtained as a consequence of the fraud."

*Brooks v. Blue Cross & Blue Shield of Fla.*, 116 F.3d  at 1371 (citation omitted).  If the rule "is to carry any water, it must mean that an essential allegation and circumstance of fraudulent

---

[7]  The Complaint attaches copies of the Policies which are incomplete and include certain documents that are not a part of the Policies.  Compl. at Exhs. B & C.  Accordingly, Transamerica has attached complete and accurate duplicates to this Motion.  *See* Exhs. A & B hereto, the 1990 Policy and the 1991 Policy, respectively.

conduct cannot be alleged in . . . conclusory fashion. *U.S. ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1313 (11th Cir. 2002).

## CHOICE OF LAW

Because this action was transferred pursuant to 28 U.S.C. § 1404(a), this Court is "obligated to apply the state law that would have been applied if there had been no change of venue." *James Ventures, L.P. v. Timco Aviation Servs., Inc.*, 315 F. App'x 885, 888 (11th Cir. 2009) (internal citation omitted); *Kolodziej v. Mason*, 996 F. Supp. 2d 1237, 1246 (M.D. Fla. 2014) ("[T]he transferee court must apply the conflicts principles of the transferor state unless venue in the transferor state was improper.") (citations omitted). Accordingly, Maryland's conflicts of law rules apply in this case.

"Under the Maryland conflicts of law rule, questions of substantive law are to be decided according to the law of the state where the cause of action accrued, but procedural matters are governed by Maryland law." *Quality Inns Int'l, Inc. v. Tampa Motel Assocs., Ltd.*, 154 F.R.D. 283, 287 (M.D. Fla. 1994) (citing *Doughty v. Prettyman*, 148 A.2d 438, 440 (Md. 1959)). Florida law applies to all substantive issues in this case.[8] In its Memorandum Opinion (DE 23) transferring this case to this Court, the Maryland court explained that this case "presents a contract dispute centered in Florida." *Id*. at 6.

> Under Maryland law, for tort claims, courts apply the law of the state where the injury occurred. *Lap Corp. of Am. v. Hood*, 911 A.2d 841, 845 (Md. 2006). Because all of the discussions regarding the policy occurred in Florida, the alleged torts of misrepresentation appear to have occurred in Florida, such that

---

[8] Statutes of limitations are considered procedural "as a general rule" and Maryland's statute of limitations will apply to the plaintiffs' claims. *President & Dirs. of Georgetown Coll. v. Madden*, 505 F. Supp. 557, 571 (D. Md. 1980) (citing *Doughty*, 148 A.2d at 440). Where, however, such statutes "bar[] the right and not merely the remedy, an exception to the general rule applies and the statute of limitations is considered substantive." *Id*. at 571 & n.22 (collecting authorities); *see also Pottratz v. Davis*, 588 F. Supp. 949, 953 (D. Md. 1984) (applying Oregon's statute of repose as substantive law of that state).

> Florida law would likely apply. *Cooper v. Berkshire Life Ins. Co.*, 810 A.2d 1045, 1052 (Md. Ct. Spec. App. 2002) (applying Maryland law to tort claims arising from misrepresentations in the negotiation of a life insurance policy when the plaintiffs resided in Maryland, the alleged misrepresentations were made to the plaintiffs in Maryland, and the policy was delivered to the plaintiffs in Maryland.).
>
> Under Maryland law, for a breach of contract claim, courts apply the law of the state in which the contract was made. *Allstate Ins. Co. v. Hart*, 611 A.2d 100, 101 (Md. 1992). A contract is made in the state in which the last act necessary to give the contract binding effect occurs. *TIG Ins. Co. v. Monongahela Power Co.*, 58 A.3d 497, 507-08 (Md. Ct. Spec. App. 2002) (noting that the final act which constitutes the making of an insurance contract is the delivery of the policy to the insured's agent). Here, where the initial payments had already been made with the applications, the delivery of the policies to the insurance agents was likely the last act. *See id.*

Memorandum Opinion (DE 23) at 10. Transamerica agrees. Gary and Bernice Lebbin were residents of Delray Beach, Florida when they were allegedly "approached by" Jack Kaye who marketed the Policies to them. Compl. ¶ 21 & Exh. B (DE 1-2) at Application. Kaye is a Florida insurance agent and the Policies were marketed and sold in Florida.[9] Several of the forms attached to the Complaint, including an "Agent's report" reflect a fax legend in Palm Beach, Florida. Compl. Exh. C (DE 1-3). Because Florida is where the contracts were solicited and formed and, where any alleged injury was suffered, Florida substantive law applies.

## **ARGUMENT**

### I. **PLAINTIFFS' CLAIMS ARE BARRED BY THE RELEVANT THREE YEAR STATUTE OF LIMITATIONS**

Plaintiffs' contract and tort claims are governed and barred by Maryland's three year

---

[9] The Maryland court accepted evidence and made findings relevant to the choice of law determination. "According to Kaye, he worked in Florida and processed the Policies in Florida." Memorandum Opinion (DE 23) at 10; *see also* Decl. of Jack Kaye at ¶ 4 (DE 19-1) ("The meetings with the Lebbins and the sales of the Policies occurred in South Florida. I signed the applications papers for the Policies in Florida. Gary Lebbin handled all of the negotiations regarding the terms and purchase of the Policies, and those discussions occurred in Florida. The Lebbins' children, Roger Lebbin and Carole Sue Lebbin, were not involved in any substantive discussions in connection with the purchase or sale of the Policies.").

statute of limitations applicable to civil actions at law.  *See* Md. Code, Cts. & Jud. Proc. § 5-101. The equitable claims and remedies based on the same allegations underlying plaintiffs' legal claims and are subject to the same three-year limitations period.  *Schaeffer v. Anne Arundel Cty.*, 656 A.2d 751, 754 (Md. 1995) ("[W]hen there are concurrent legal and equitable remedies . . . the applicable statute of limitations for the legal remedy is equally applicable to the equitable one.") (citation omitted).[10]

Civil actions are deemed to have "accrued" under Maryland law "'when the claimant in fact knew or reasonably should have known of the wrong.'"  *Montrose Educ. Servs., Inc. v. Sylvan Learning Sys., Inc.*, 2007 WL 979923, at *4 (D. Md. Mar. 30, 2007) (quoting *Poffenberger v. Risser*, 431 A.2d 677, 680 (Md. 1981)).  This discovery rule "does not require actual knowledge on the part of the plaintiff," but is satisfied "when the plaintiff possesses facts sufficient to cause a reasonable person to investigate further," and where plaintiff would have discovered the alleged wrong through a "diligent investigation."  *George v. Mass. Mut. Life Ins. Co.*, 2018 WL 656436, at *5 (internal citations omitted).

The alleged "wrong" asserted here is Transamerica's issuance of the Policies with terms that contradicted the alleged representations of the agent.  Compl. ¶¶ 22-26.  Plaintiffs complain that "in breach of its representations, promises and commitments, Transamerica has now decided to terminate Mr. Lebbin's life insurance coverage, solely because he is obtaining [*sic*] the age of 100."  *See* Compl. ¶ 4.  The alleged solicitation occurred "[i]n or about 1990" (Compl. ¶ 21), and the Policies were timely delivered in 1990 and 1991 (Compl. ¶ 26).  Because the Policies'

---

[10] Plaintiffs' claims for declaratory relief and violations of the Maryland Consumer Protection Act are also subject to a three-year statute of limitations.  *George v. Mass. Mut. Life Ins. Co.*, 2018 WL 656436, at *4 (D. Md. Feb. 1, 2018) (declaratory judgment subject to same statute of limitations as underlying claim); *Greene Tree Home Owners Ass'n v. Greene Tree Assocs.*, 749 A.2d 806, 820-21 (Md. 2000) (applying three-year statute of limitations to Maryland Consumer Protection Act claims).

maturity and termination provisions were stated on the front page of the Policies, plaintiffs'
cause of action accrued in 1990, when they would have discovered the alleged wrong through a
diligent investigation, or even a cursory review of the 1990 Policy.[11]

## II.   PLAINTIFFS' FRAUD AND NEGLIGENT MISREPRESENTATION CLAIMS ARE BARRED BY FLORIDA'S TWELVE YEAR STATUTE OF REPOSE

Plaintiffs' fraud and negligent misrepresentation claims (Counts II & III) are
independently extinguished by Florida's twelve year statute of repose.  In Florida, "[a]n action
for fraud under § 95.11(3) must be begun within 12 years after the date of the commission of the
alleged fraud, regardless of the date the fraud was or should have been discovered."  Fla. Stat. §
95.031(2)(a).  Similarly, "an action for negligent misrepresentation sounds in fraud rather than
negligence" and is subject to the twelve year statute of repose.  *Souran v. Travelers Ins. Co.*, 982
F.2d 1497, 1511 (11th Cir. 1993); *see also Jacobs v. Unum Grp. Corp.*, 2017 WL 3726477, at
*4-5 (M.D. Fla. June 9, 2017) (negligent misrepresentation claims barred by twelve year statute
of repose).   "A statute of limitations is not analogous to a statute of repose.  'A statute of
limitations extinguishes the right to prosecute an accrued cause of action after a period of time.'
A statute of repose, on the other hand . . . , abolishes the cause of action . . . .'"  *See Becker v.
Harken, Inc.*, 2007 WL 473089, at *5 (S.D. Fla. Feb. 8, 2007) (quoting *Servicios-Expoarma,
C.A. v. Indus. Mar. Carriers, Inc.*, 135 F.3d 984, 989 (5th Cir. 1998)).

---

[11] Plaintiffs allege that "[i]n or about 2016," they first learned that Transamerica
"intended to terminate the Policies." Compl. ¶ 56.  This allegation cannot render their claims
timely.  Plaintiffs do not identify a single fact they learned in 2016 that was any different from
the information readily available to them for the prior twenty-six years.  Any representation by
Transamerica in 2016 (or at any other time) that it intended to terminate the Policies if Mr.
Lebbin reached 100 years of age would be nothing more than Transamerica re-stating the express
terms of the Policies, not a discovery of their claims.  *See, e.g., Ruddy v. Equitable Life
Assurance Soc'y*, 2000 WL 964770, at *3-5 (D. Md. June 20, 2000) (granting motion to dismiss
similar claims on statute of limitations grounds where agent allegedly misrepresented terms of
whole life policy to induce plaintiff's purchase, but terms were readily apparent).

Plaintiffs in this case allege that they were misled by Transamerica's agent Jack Kaye, who convinced the Lebbins to purchase insurance policies that were not what Kaye promised them. Compl. ¶¶ 77-79, 84-86. Based on plaintiffs' allegations, the alleged fraud would have been committed between 1990 and 1991. The fraud and negligent misrepresentation claims were, therefore, abolished by the twelve year statute of repose in 2002 and 2003, and should be dismissed with prejudice.

## III.   COUNT ONE FOR BREACH OF CONTRACT SHOULD BE DISMISSED BECAUSE THE POLICIES MATURED AND TERMINATED CONSISTENT WITH THE EXPRESS CONTRACT TERMS

Count One of the Complaint asserts a claim for breach of contract but nowhere do plaintiffs identify a specific contractual provision that Transamerica purportedly breached. To the contrary, the core allegations supporting the breach of contract claim are that "[t]he Policies were to provide permanent coverage for the lives of the Lebbins," "[t]he Policies were represented to be suitable," and the Policies were to "provide taxable advantages." Compl. ¶¶ 64-66. The Complaint never actually alleges what the Policies *did* provide that Transamerica failed to deliver. "In the case of a breach of contract claim, however, the essence of the claim is that some provision of the agreement has been breached." *Gentry v. Harborage Cottages-Stuart LLP*, 2008 WL 1803637, at *4 (S.D. Fla. Apr. 21, 2008) (dismissing breach of contract claim where no term identified); *see also Branch Banking & Trust Co. v. Appraisalfirst, Inc.*, 2010 WL 11596299, at *5 (S.D. Fla. July 7, 2010) (dismissing complaint and citing cases). Plaintiffs cannot point to a breach because "[t]he clear language of the polic[ies] unambiguously refutes [plaintiffs'] allegation," requiring dismissal. *Caplen v. Guardian Life Ins. Co. of Am.*, 1996 WL 1057652, at *5 (S.D. Fla. Oct. 22, 1996) (dismissing breach of contract claim relating to a life insurance policy); *Zarrella v. Pac. Life Ins. Co.*, 755 F. Supp. 2d 1231, 1241-42 (S.D. Fla. 2011) (granting motion to dismiss contract claim against life insurer); *Cross v. Primerica Life Ins.*

*Corp.*, 2014 WL 12527701, at *3 (N.D. Fla. Feb. 11, 2014) (dismissing contract claim where plaintiff "seeks to re-write the insured's payment obligation as stated in the insurance policy").

Nor does plaintiffs' invocation of the implied covenant of good faith and fair dealing save their claims.  Compl. ¶¶ 70-72.  The implied covenant does not apply because (1) it would contravene the express terms of the agreement, (2) there is no contract term that is alleged to have been breached, and (3) it is redundant of plaintiffs' failed breach of contract claim.  *See Ins. Concepts & Design, Inc. v. Healthplan Servs., Inc.*, 785 So. 2d 1232, 1234 (Fla. 4th DCA 2001) (explaining those "restrictions" and affirming dismissal of complaint with prejudice); *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1316, 1318 (11th Cir. 1999) (holding implied covenant of good faith cannot be used to override the express terms of an agreement).  "Good faith and fair dealing is an interpreting, gap-filling doctrine which applies only when the propriety of a contracting party's conduct *is not resolved by the terms of the contract*."  *Stallworth v. Hartford Ins. Co.*, 2006 WL 2711597, at *5 (N.D. Fla. Sept. 19, 2006) (emphasis added).  Because the Policies explicitly provide that they will terminate at age 100, the implied covenant cannot be used to change the terms to extend coverage after that date.

Moreover, a claim for breach of the implied covenant of good faith "must relate to the performance of an express term of the contract and [the implied covenant] is not an abstract and independent term of a contract which may be asserted as a source of breach when all other terms have been performed."  *Hosp. Corp. of Am. v. Fla. Med. Ctr., Inc.,* 710 So. 2d 573, 575 (Fla. 4th DCA 1998); *Centurion Air Cargo, Inc. v. United Parcel Serv. Co.,* 420 F.3d 1146, 1152 (11th Cir. 2005) (same).  "Allowing a claim for breach of the implied covenant of good faith and fair dealing "where no enforceable executory contractual obligation" remains would add an obligation to the contract that was not negotiated by the parties."  *Ins. Concepts & Design, Inc.*, 785 So. 2d at 1235 (citation omitted).  The implied covenant claim must also be dismissed

-13-

because it is redundant of the breach of contract allegations. *Bradman v. Mental Health Network, Inc.*, 2008 WL 5110525, at *4 (S.D. Fla. Dec. 2, 2008) (dismissing implied covenant claim as duplicative).

## IV. COUNTS TWO AND THREE SHOULD BE DISMISSED FOR FAILURE TO PLEAD PLAINTIFFS' FRAUD AND NEGLIGENT MISREPRESENTATION CLAIMS WITH PARTICULARITY AS REQUIRED BY RULE 9(b)

Plaintiffs' claims for fraud and negligent misrepresentation should be dismissed for failure to plead fraud with sufficient particularity. Both of these claims are asserted in shotgun fashion, incorporating "by reference each and every averment of fact contained in the preceding paragraphs as if set forth herein at length." Compl. ¶¶ 76, 83. This is followed by vague allegations of misrepresentations that do not identify the who, what, when, where, or how of the alleged misrepresentations. Compl. ¶ 77 ("Transamerica, through its employees and other agents, represented to Plaintiffs that the Policies constituted permanent life insurance[.]"); *id*. ¶¶ 78-79 (Transamerica "made multiple representations" about "suitability" and "tax treatment").[12] The Complaint generally identifies Jack Kaye as the Transamerica agent who sold the Policies to the Lebbins, but the allegations of alleged fraud and negligent misrepresentation fail to identify any specifics about exactly what statements were made, who made them, when or where the representations occurred, and to whom they were made. A plaintiff "most assuredly fails to satisfy the requirements of Rule 9(b)" where he does not identify who made the alleged misrepresentation, does not allege when or where the statement was made, and does not allege "exactly what was said." *Joseph v. Bernstein*, 2014 WL 12600805, at *1, 6 (S.D. Fla. 2014) (allegations of fraudulent inducement did not satisfy Rule 9(b), where plaintiff alleged his father purchased a second-to-die life insurance policy, and the agent did not explain the terms of the

---

[12] The Eleventh Circuit has repeatedly condemned this pleading style. *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1294-95 (11th Cir. 2018).

policy, including that it would "never pay off" if either insured lived to the age of 100); *see also Garcia v. Santa Maria Resort, Inc.*, 528 F. Supp. 2d 1283, 1295 (S.D. Fla. 2007) ("Plaintiffs' allegations clearly lack the required particularity because, among other things, they omit any mention of time, place, and identity of speaker.").

## V.    COUNTS TWO AND THREE SHOULD BE DISMISSED BECAUSE PLAINTIFFS CANNOT ESTABLISH REASONABLE RELIANCE

Plaintiffs' claims for fraud and negligent misrepresentation also fail on the merits because plaintiffs cannot  demonstrate that they reasonably relied on the alleged misrepresentations about the Policies.  *See Garcia*, 528 F. Supp. 2d at 1295 (dismissing such claims brought by purchasers of condominium units against developer because alleged misrepresentations, guaranteeing that plaintiffs would be able to "flip" the properties, were contradicted by the written contract terms ). In *Garcia*, the court found "as a matter of law, Plaintiffs could not have reasonably relied on any of the alleged misrepresentations.  '[R]eliance on fraudulent misrepresentations is unreasonable *as a matter of law* where the alleged misrepresentations contradict the express terms of the ensuing written agreement.'" *Id.* (quoting *Eclipse Med., Inc. v. Am. Hydro-Surgical Instruments, Inc.*, 262 F. Supp. 2d 1334, 1342 (S.D. Fla. 1999)).   Similarly, plaintiffs' reliance here was unreasonable as a matter of law because the written terms of the Policies contradicted any representations that the Policies would provide "permanent" coverage or that cash values would never be distributed unless requested by the plaintiffs.  Compl. ¶¶ 22-23.  Plaintiffs had a duty to read the Policies and cannot escape the terms of the Policies by alleging that "the terms were not explained to [them]."  *Benoay v. E.F. Hutton & Co.*, 699 F. Supp. 1523, 1529 (S.D. Fla. 1988) (plaintiff who alleged implications of an arbitration clause were not explained to her had a duty

to read and "[t]he facts alleged by the plaintiff do not amount to a fraud under Florida law").[13] Accordingly, plaintiffs cannot establish reasonable reliance and their misrepresentation claims should be dismissed with prejudice.

## VI.   COUNT FOUR FOR VIOLATIONS OF THE MARYLAND CONSUMER PROTECTION ACT FAILS

Plaintiffs' claim for a violation of Maryland's Consumer Protection Act, Md. Code, Comm. Law, § 13-101 *et seq.* (the "MCPA"), also fails because the MCPA does not apply to insurance transactions, it does not apply to sales made outside of Maryland, and plaintiffs have failed to plead it with particularity.  First, the MCPA excludes from its reach "the professional services of a[n] . . . insurance company authorized to do business in this State," Md. Code, Comm. Law, § 13-104(1), and it "explicitly exempts insurance providers from the law's application."  *Gladney v. Am. W. Home Ins. Co.*, 2016 WL 1366029, at *7 (D. Md. Apr. 6, 2016) (dismissing MCPA claims against insurance company).  Transamerica, an insurance company authorized to do business in Maryland, falls within this exemption.  Because the conduct complained of falls squarely within the professional service of insurance, the MCPA claim fails.

The MCPA also does not apply to the conduct that occurs outside of Maryland.  Md. Code, Comm. Law, § 13-102(b)(1), (3) (noting the legislation sets "certain minimum statewide standards" to protect consumers in Maryland and prevent unfair practices "occurring in

---

[13] Plaintiffs also allege that the Policies were misrepresented as "suitable" or a "better deal" than individual policies (Comp. ¶ 28), but these are statements of opinion that cannot serve as the basis for a misrepresentation claim.  "A plaintiff may not maintain an action for fraud based on misrepresentations that were in the form of opinions and not statements of existing, material facts."  *Silver v. Countrywide Home Loans, Inc.*, 760 F. Supp. 2d 1330, 1342-43 (S.D. Fla. 2011) (loan officer's representations that loan was a "good deal" for plaintiff, and plaintiff's home value would "continue to rise" were opinions rather than statements of existing material fact); *Steinhauser v. Steinhauser*, 2018 WL 1100850, at *2-3 (S.D. Fla. Jan. 24, 2018) (defendant's representation that a settlement agreement was in plaintiffs' "best interest" was a non-actionable opinion and not a statement of fact).

-16-

Maryland").   When ascertaining whether the MCPA applies to extra-territorial conduct, "the critical point" is  "whether some significant portion of the challenged activity occurred there." *Elyazidi v. Suntrust Bank*, 780 F.3d 227, 237 (4th Cir. 2015).  In *Elyazidi*, the Fourth Circuit declined to apply the MCPA where the plaintiff "was a Virginia resident who incurred a debt in Virginia[, and t]he allegedly offensive representations appeared in Virginia court documents." *Id.*; *see also Consumer Prot. Div. v. Outdoor World Corp.*, 603 A.2d 1376, 1383 (Md. Ct. Spec. App. 1992) (the MCPA does not "preclude sales practices that occur entirely within other States"); *Att'y Gen. of Md. v. Dickson*, 717 F. Supp. 1090, 1101 (D. Md. 1989) (the MCPA does not apply if there is no "communication to a consumer or potential consumer in the State" of Maryland).  Here, the conduct forming the basis of the MCPA claim occurred in Florida, where the Lebbins' were allegedly solicited by agent Jack Kaye to purchase the Policies.  The MCPA does not apply to the Lebbins' Florida insurance transactions.

Moreover, because an MCPA claim sounds in fraud, the Complaint must meet the pleading requirements of Fed. R. Civ. P. 9(b), which requires that a plaintiff provide details regarding "the time, place, and contents of the false representations" and the identity of the speaker.  *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 776 (4th Cir. 2013) (dismissing MCPA claims).  Plaintiffs MCPA claim suffers the same pleading deficiencies as their fraud and negligent misrepresentations claims and does not meet the particularity standard of Rule 9(b).  *Compare* Compl. ¶ 96, *with* ¶¶ 77-79 & 84-86 (same vague allegations forming basis of negligent misrepresentation, fraud, and MCPA claims).[14]

--------

[14] Because the non-viable MCPA claim is the only cause of action which would allow plaintiff's counsel to be awarded their fees, *see* Md. Code, Comm. Law, § 13-408(b), in addition to dismissing that claim, the Court should strike plaintiff's request for "attorneys' and other professional fees, expenses and costs."  Compl., at Relief Requested ¶ G.

**VII.   COUNT FIVE FOR UNJUST ENRICHMENT MUST BE DISMISSED BECAUSE PLAINTIFFS' CLAIMS ARE GOVERNED BY THE TERMS OF AN EXPRESS CONTRACT AND PLAINTIFFS HAVE AN ADEQUATE REMEDY AT LAW**

Plaintiffs unjust enrichment claim alleges nothing more than the payment and acceptance of insurance premiums pursuant to two admittedly valid insurance contracts.  Compl. ¶¶ 99-100.  The allegations are insufficient to state a claim for unjust enrichment under Florida law.  "'[N]o cause of action in unjust enrichment can exist where the parties' relationship is governed by an express contract.'"  *Vazquez v. Gen. Motors, LLC*, 2018 WL 447644, at *7 (S.D. Fla. Jan. 16, 2008) (quoting *Zarella v. Pac. Life Ins. Co.*, 755 F. Supp. 2d 1218, 1227 (S.D. Fla. 2010)); *Dye v. United Servs. Auto. Ass'n*, 89 F. Supp. 3d 1332, 1337 n.4 (S.D. Fla. 2015) ("a claim for unjust enrichment is precluded by the existence of an express contract between the parties concerning the same subject matter") (internal citations omitted).  This is not a case in which plaintiffs allege unjust enrichment in the alternative, or where plaintiffs contend the contract at issue is invalid.  Plaintiffs allege that "[t]he Policies are valid, enforceable contracts."  Compl. ¶ 62.  Because the Policies govern the parties' rights and obligations, Plaintiffs' unjust enrichment claim fails.  *See PDF Foods, LLC v. Naked Juice Co. of Glendora, Inc.*, 2008 WL 11331990, at *4 (S.D. Fla. Apr. 29, 2008) (dismissing unjust enrichment claim where "the Complaint itself alleges that an Agreement is in place"); *Vazquez*, 2018 WL 447644, at *7 (dismissing unjust enrichment claim because contract governed "subject matter at issue"); *Zarrella*, 755 F. Supp. 2d at 1227 (same).

The unjust enrichment claim must also be dismissed because plaintiffs do not allege any facts that would demonstrate they are entitled to an equitable remedy.  Unjust enrichment is not a "catch-all" claim that can be based on vague allegations of wrongdoing; it is an equitable claim, the "paradigm example[ ]" of which is a mistaken transfer of money or property.  *Licul v. Volkswagen Grp. of Am., Inc.*, 2013 WL 6328734, at *7 (S.D. Fla. Dec. 5, 2013); *Tilton v. Playboy Ent. Grp., Inc.*, 2007 WL 80858, at *3 (M.D. Fla. Jan 8, 2007).  There was no mistake

here.   Plaintiffs admit the Lebbins purchased and retained the Policies for twenty-six years.

Moreover, a claim for unjust enrichment is "not available where there is an adequate legal

remedy."   *Vazquez*, 2018 WL 447644, at \*7 (citation omitted); *see also Licul*, 2013 WL

6328734, at \*7 ("Unjust enrichment is an equitable cause of action that is unavailable where the

underlying wrongs are properly addressed by a legal remedy."); *Tilton*, 2007 WL 80858, at \*3

("Where a plaintiff predicates their unjust enrichment claim on the wrongful conduct of a

defendant, then the plaintiff's right of recovery, if any, arises from the wrong of the alleged tort

rather than unjust enrichment."); *Jovine v. Abbott Labs., Inc.*, 795 F. Supp. 2d 1331, 1341-42

(S.D. Fla. 2011) (dismissing unjust enrichment claim where related tort claims demonstrated

availability of adequate legal remedy).

## VIII.   COUNTS SIX THROUGH NINE SHOULD BE DISMISSED BECAUSE PLAINTIFFS ARE NOT ENTITLED TO THE DECLARATION THEY SEEK NOR ARE THEY ENTITLED TO THE EQUITABLE REMEDIES OF REFORMATION OR RESCISSION

The remaining claims should also be dismissed.   Count VI seeks a declaration that

Transamerica "cannot terminate the Policies" and "cannot unilaterally issue adverse taxable

distributions of cash value to Plaintiffs."   Compl. ¶ 108.   In Count VII, plaintiffs seek to reform

the Policies "to conform to the original and agreed-upon intentions of the parties."   Compl. ¶

114. Similarly, in Count IX, plaintiffs seek to rescind the Policies.   Compl. ¶ 117.

Fundamentally, each of these Counts is duplicative of the legal claims asserted elsewhere in the

Complaint, and each fails for the same reasons discussed, *supra*.[15]   Moreover, to the extent that

---

[15] The rescission claim also fails because "a fundamental requirement necessary for rescission of a contract is that the moving party has no adequate remedy at law."   *Collier v. Boney*, 525 So. 2d 971, 972 (Fla. 1st DCA 1988); *Allegheny Cas. Co. v. Archer-Western/Demaria Joint Venture III*, 2014 WL 4162787, at \*20 (M.D. Fla. Aug. 21, 2014) (court found rescission was not an available remedy where plaintiff had an adequate remedy at law). Plaintiffs' rescission claim merely seeks the same damages as their claim for breach of contract.

these claims seek to prevent the termination of the Policies, they are moot.  Plaintiffs made no effort to obtain a ruling on their request that Transamerica "cannot terminate the Policies," or that the Policies should be reformed or rescinded before each of the Policies lapsed.  The Policies have already terminated.  *See, e.g.*, *Gagliardi v. TJCV Land Trust*, 889 F.3d 728, 734-35 (11th Cir. 2018) (claims for equitable relief become moot when threat of future harm is eliminated during the litigation and, with respect to the Declaratory Judgment Act, there "must be a case or controversy that is live, is 'definite and concrete,' and is susceptible to 'specific relief though a decree of a conclusive character'") (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937))**.**

Plaintiffs' claim for reformation also fails because in order to reform a contract, a party must establish a mutual mistake, or a unilateral mistake on the part of one party, and the inequitable conduct of the other party.  *Surety Bank v. Dunbar Armored, Inc.*, 2015 WL 845590, at *4 (S.D. Fla. Feb. 25, 2015) (citation omitted).  Florida courts analyzing reformation claims employ a strong presumption that an insurance policy correctly expresses the intent of the parties.  *See Mt. Hawley Ins. Co. v. Miami River Port Terminal, LLC*, 228 F. Supp. 3d 1313, 1328 (S.D. Fla. 2017) (citing *Niagara Fire Ins. Co. v. Allied Elec. Co.*, 319 So. 2d 594, 595 (Fla. 3d DCA 1975)).  This case is about regret, not mistake.  The Lebbins were well aware of the Policies' terms shortly after they purchased the Policies, at the latest, and the allegations do not support a claim for reformation.  *Mt. Hawley Ins. Co.*, 228 F. Supp. 3d at 1330 (finding no basis for reformation to add a Named Insured to an insurance policy where purchasers never listed the entity sought to be insured in multiple applications).

## CONCLUSION

For the foregoing reasons, Transamerica respectfully requests that the Court dismiss Plaintiffs' Complaint with prejudice.

Dated:  June 1, 2018                        Respectfully submitted,

                                        /s/  Richard J. Ovelmen

MARKHAM R. LEVENTHAL (FBN 616140)
mleventhal@carltonfields.com
RICHARD J. OVELMEN (FBN 284904)
rovelmen@carltonfields.com
JULIANNA THOMAS MCCABE (FBN 355010)
jtmccabe@carltonfields.com
CARLTON FIELDS JORDEN BURT, P.A.
Miami Tower, Suite 4200
100 S.E. Second Street
Miami, Florida 33131
Telephone:  (305) 530-0050
Facsimile:  (305) 530-0055

*Counsel for Defendant*
*Transamerica Life Insurance Company*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 1st day of June, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on the following counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF:

Michael Marcil, Esq.
Gunster, Yoakley & Stewart, P.A.
450 East Las Olas Boulevard, Suite 1400
Fort Lauderdale, Florida 33301
Telephone:  (954) 462-2000
Facsimile:  (954) 523-1722
mmarcil@gunster.com

*Counsel for Plaintiffs*

James S. Bainbridge, Esq.
The Bainbridge Law Firm, LLC
1250 Germantown Pike, Suite 203
Plymouth Meeting, Pennsylvania 19462
Telephone:  (484) 690-4542
Facsimile:  (888) 914-8239
jsb@thebainbridgelawfirm.com

*Counsel for Plaintiffs*

Emily J. Baxter, Esq.
Gunster, Yoakley & Stewart, P.A.
777 South Flagler Drive, Suite 500 East
West Palm Beach, Florida 33401
Telephone:  (561) 650-0660
Facsimile:  (561) 655-5677
ebaxter@gunster.com

*Counsel for Plaintiffs*

_____    /s/  Richard J. Ovelmen    _____

114736450

-22-