**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**CASE No. 18-80558-CV-MIDDLEBROOKS/BRANNON**

GARY H. LEBBIN, et al.,
    Plaintiffs,

v.

TRANSAMERICA LIFE INSURANCE
COMPANY,
    Defendant.
_____/

---

PLAINTIFFS GARY H. LEBBIN AND THE LEBBIN-SPECTOR FAMILY TRUST'S
OPPOSITION TO DEFENDANT TRANSAMERICA LIFE INSURANCE COMPANY'S
MOTION TO DISMISS AND MEMORANDUM IN SUPPORT THEREOF

---

**THE BAINBRIDGE LAW FIRM, LLC**
James S. Bainbridge, Esquire
PA Attorney ID # 82607
1250 Germantown Pike, Suite 203
Plymouth Meeting, PA 19462
(484) 690-4542
jsb@thebainbridgelawfirm.com
*Attorneys for Plaintiffs*

**GUNSTER, YOAKLEY & STEWART, P.A.**
Michael W. Marcil, Esq.
Florida Bar No. 91723
mmarcil@gunster.com
Emily J. Baxter, Esq.
Florida Bar No.: 1004117
ebaxter@gunster.com
777 South Flagler Drive, Suite 500 East
West Palm Beach, FL  33401
Telephone: (561) 650-0532
Facsimile: (561) 655-5677
*Local Counsel for Plaintiffs*

Dated: June 22, 2018

## Table of Contents

*Page*

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

FACTUAL BACKGROUND .................................................................................................. 2

    A.  The Lebbins ............................................................................................................ 2

    B.  The Policies ............................................................................................................ 2

    C.  Transamerica Notifies the Lebbins of its Intention to Repudiate/Terminate and
        Issue a Taxable Distribution ................................................................................. 3

PROCEDURAL HISTORY .................................................................................................... 4

LEGAL STANDARD ........................................................................................................... 4

    A.  Standard on Motion to Dismiss ........................................................................... 4

ARGUMENT ...................................................................................................................... 5

    A.  Choice of Law Issues Requiring Discovery Prevent Dismissal at this Stage ................. 5

    B.  The Lebbins' Contract and Tort Claims are Timely ...................................................... 7

            i.  Transamerica's Affirmative Statute of Limitations Defense is
               Premature ........................................................................................................ 7

          ii.  The Lebbins' Contract Claims Did Not Accrue Until Transamerica
               Repudiated the Policies ................................................................................... 8

        iii.  The Lebbins' Tort Claims Were Tolled By Maryland's Discovery
               Rule ................................................................................................................. 9

    C.  The Lebbins' Fraud and Negligent Misrepresentation Claims Are Not Barred by
        the Statute of Repose ............................................................................................ 11

    D.  Count One Should Not Be Dismissed as the Policy Language is Ambiguous ............. 12

    E.  The Lebbins' Fraud and Negligent Misrepresentation Claims Are Pled with
        Sufficient Particularity ......................................................................................... 13

    F.  Reasonable Reliance is an Issue for the Jury ........................................................ 15

    G.  It Is Premature To Address the Lebbins' Consumer Protection Claim ...................... 17

    H.  The Lebbins' Unjust Enrichment Claim is Properly Pled ...................................... 18

    I.  The Lebbins' Claim for Declaratory Judgment, Rescission and Reformation Are
       Properly Pled ........................................................................................................ 19

CONCLUSION ................................................................................................................. 20

i

### TABLE OF AUTHORITIES

*Abromats v. Abromats*,
  No. 16-CV-60653, 2016 WL 6808082 (S.D. Fla. Nov. 17, 2016) .......................................... 20

*Allstate Ins. Co. v. Hart*,
  611 A.2d 100 (Md. 1992) ..................................................................................................... 6

*AXA Equitable Life Insurance Co. v. Infinity Financial Group LLC, et al.*,
  608 F. Supp. 2d 1349 (S.D. Fla. 2009) ................................................................................. 5

*Baker, Watts & Co. v. Miles & Stockbridge*,
  620 A.2d 356 (Md. Ct. Spec. App.1993) .............................................................................. 8

*Bearse v. Main Street Invs.*,
  220 F. Supp. 2d 1338 (M.D. Fla. 2002).................................................................................. 8

*Begualg Inv. Mgmt., Inc. v. Four Seasons Hotel Ltd.*,
  No. 10-22153-CIV, 2012 WL 1155128 (S.D. Fla. Apr. 5, 2012)..................................... 15, 16

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007).......................................................................................................... 4, 5

*Calixto v. BASF Const. Chemicals, LLC*,
  No. 07-60077-CIV, 2008 WL 2490454 (S.D.Fla. June 19, 2008)........................................... 6

*Cooper v. Berkshire Life Ins. Co.*,
  810 A.2d 1045 (Md. Ct. Spec. App. 2002)…………………………………………..10, 11

*Curry v. Trustmark Ins. Co.*,
  No. 13-1995 (4th Cir. Feb. 6, 2015) ..................................................................................... 9

*Drilling Consultants, Inc. v. First Montauk Sec. Corp.*,
  806 F. Supp. 2d 1228 (M.D. Fla. 2011).................................................................................. 16

*Fed. Deposit Ins. Corp. for First Nat'l Bank of Nevada v. Lazcano*,
  No. 08-21769, 2009 WL 10699886 (S.D. Fla. Jan. 6, 2009)................................................... 13

*Federalsburg v. Allied Con.*,
  338 A.2d 275 (Md. 1975) ..................................................................................................... 10

*Fischer v. Viacom Intern., Inc.*,
  115 F. Supp. 2d 535 (D. Md. 2000)........................................................................................ 10

*Fye v. Broadspire Servs., Inc.*,
  Case No. 07-CV-60903, 2007 WL 4557152 (S.D. Fla. Dec. 20, 2007) ................................. 5

*Gasper v. Louisiana Stadium*,
577 F.2d 897 (5th Cir. 1978) ............................................................................................ 5

*Gelfound v. Metlife Ins. Co. of Connecticut*,
Case No. 13-80479-CIV, 2014 WL 584214 (S.D. Fla. Feb. 14, 2014) ................................ 5

*Goldstein v. Potomac Elec. Power Co.*,
404 A.2d 1064 (Md. 1979) ................................................................................................ 8

*Harrison v. Westinghouse Savannah River Co.*,
176 F.3d 776 (4th Cir. 1999). .......................................................................................... 5

*Hepp v. Paul Revere Life Ins. Co.*,
120 F. Supp. 3d 1328 (M.D. Fla. 2015) ...................................................................... 11, 12

*Johnson v. GEICO Gen. Ins.*,
No. 08-CV-80740, 2008 WL 4793616 (S.D. Fla. Nov. 3, 2008) .......................................... 19

*Jones v. Hyatt Insurance Agency, Inc*,
741 A.2d 1099 (Md. 1999) ................................................................................................ 8

*Kumar v. Dhanda*,
17 A.3d 744 (Md. Ct. Spec. App. 2011) .............................................................................. 8

*Larach v. Standard Chartered Bank Int'l (Americas) Ltd.*,
724 F. Supp. 2d 1228 (S.D. Fla. 2010) .............................................................................. 13

*Managed Care Sols., Inc. v. Cmty. Health Sys., Inc.*,
No. 10-60170-CIV, 2011 WL 6024572 (S.D. Fla. Dec. 2, 2011) .......................................... 12

*Martorella v. Deutsche Bank Nat. Tr. Co.*,
931 F. Supp. 2d 1218 (S.D. Fla. 2013) .......................................................................... 18, 19

*MeterLogic, Inc. v. Copier Solutions, Inc.*,
126 F. Supp. 2d 1346 (S.D. Fla. 2000) .............................................................................. 14

*Mizzaro v. Home Depot, Inc.*,
544 F.3d 1230 (11th Cir. 2008) ........................................................................................ 13

*Pavlisin v. Corr. Corp. of Am.*,
Civ. No. 08-298, 2009 WL 1043918 (M.D. Fla. Apr. 17, 2009) ............................................ 8

*Poffenberger v. Risser*,
431 A.2d 677 (Md. 1981) .................................................................................................. 10

iii

*Romo v. Amedex Ins. Co.*,
    930 So.2d 643 (Fla. 3d DCA 2006) .................................................................. 15

*Silver Creek Farms, LLC v. Fullington*,
    No. 16-80353-CIV, 2018 WL 1990522 (S.D. Fla. Feb. 15, 2018) ......................... 18

*Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention*,
    623 F.3d 1371 (11th Cir. 2010) ........................................................................... 4

*State Farm Mut. Auto. Ins. Co. v. Kugler*,
    Civ. No. 11–80051, 2011 WL 4389915 (S.D. Fla. Sept. 21, 2011) ........................ 8

*Steinberg v. A Analyst Ltd.*,
    No. 04–60898, 2009 WL 806780 (S.D.Fla. Mar. 26, 2009) ................................... 6

*TIG Ins. Co. v. Monongahela Power Co.*,
    58 A.3d 497 (Md. Ct. Spec. App. 2012) ............................................................... 6

*Ventana Hotels & Resorts, LLC v. Habana Libre Hotel, LLC*,
    No. 0622993-CIV-MCALILEY, 2007 WL 2021940 (S.D. Fla. July 11, 2007) ................... 12

*Whitney Nat. Bank v. SDC Communities, Inc.*,
    No. 809CV01788EAKTBM, 2010 WL 1270266 (M.D. Fla. Apr. 1, 2010) ......................... 16

## STATUTES

Fla. Stat. § 95.031(2)(a) .......................................................................................... 11
Md. Code, Comm. Law, § 13-101 *et seq*. ................................................................. 17

## OTHER AUTHORITIES

Restatement (Third) of Restitution & Unjust Enrichment § 2(2) cmt. c. ........................ 18

## RULES

Fed. R. Civ. P. 9(b) ................................................................................................ 13
Fed. R. Civ. P. 8 .................................................................................................... 19

Plaintiffs, Gary H. Lebbin and The Lebbin-Spector Family Trust (the "Trust"), by and through its Trustees Roger M. Lebbin and Carole Sue Lebbin (the "Trustees") (collectively the "Lebbins"), hereby submit this response in opposition to the motion to dismiss of Defendant Transamerica Life Insurance Company ("Transamerica") [D.E. # 43].

## I.   <u>INTRODUCTION</u>

For decades, Transamerica has marketed and sold a product known as Universal life insurance which it represents as "a type of permanent life insurance that provides <u>coverage for life.</u>"  Compl. ¶¶ 20; Compl., Ex. A.  Plaintiff Gary H. Lebbin and his wife, Bernice H. Lebbin, purchased two of these policies from Transamerica to provide income tax-free proceeds to the Lebbins' estate at their passing.  Transamerica collected over $1.5 million dollars in premiums from the Lebbins (on policies with a combined death benefit of $3,200,000), all the while representing to the Lebbins that the Trust owned permanent life Universal life insurance that would not trigger a taxable event.

However, known only to Transamerica and its agents, and for reasons set forth in the Complaint and that will be more fully developed during discovery, the Universal life insurance policies were not permanent, were not intended by Transamerica to insure the Lebbins for life and would, instead, result in Transamerica issuing them a taxable distribution during Mr. and Mrs. Lebbins' lifetimes.  The policies, *inter alia*, were based upon outdated mortality tables and contained ambiguous, confusing and misleading policy language that led the Lebbins to believe they would be insured for the remainder of their lives.

Transamerica now seeks to dismiss the Lebbins' Complaint, pursuant to Rule 12(b)(6), while improperly raising affirmative defenses such as the statute of limitations and statute of repose in order to prevent the Lebbins from uncovering further evidence of their fraudulent

conduct and breach of contractual duties.  However, Transamerica's demand that this Court

dismiss the Lebbins' claims, is at best, premature and clearly unfounded under the Rules and the

law, as set forth below.  The allegations of the Complaint, when viewed in the light most

favorable to the Lebbins, demonstrate that this is not a matter so free of doubt that Transamerica

is entitled to judgment as a matter of law without even allowing the Lebbins the benefit of

developing a factual record in support of their claims.

## II.   FACTUAL BACKGROUND

### A.   The Lebbins

Escaping Nazi persecution in the late 1930's, Gary H. Lebbin immigrated to the United

States where, after arriving penniless, he founded a successful paint manufacturing and retail

business in the Maryland-Virginia-DC area and married Bernice H. Lebbin[1].  Compl. ¶¶ 13-15.

Loving parents, grandparents and great-grandparents, the Lebbins' primary focus in their

lives was always to care and provide for their family.  Compl. ¶¶ 18-19.  To this end, in the early

1990s, they became concerned with developing an appropriate tax and estate planning strategy

that would allow them to provide for the health and well-being of their children, as well as the

education of their grandchildren.  *Id.*

### B.   The Policies

In or about 1990, Mr. Lebbin and his wife, Bernice H. Lebbin, were approached by

Transamerica, through its agent Jack Kaye, and were presented with a tax and estate planning

strategy that involved the purchase of two Universal life insurance policies.  Compl. ¶ 21.  The

policies were marketed, sold and represented to The Lebbins by Transamerica and its agent as

permanent coverage that would insure the Lebbins for life and guarantee their joint estate income

---

[1] Unfortunately, Mrs. Lebbin passed away in 2015.  Compl. ¶ 17.

- 2 -

tax-free liquid assets with which to pay estate taxes, so long as they paid the necessary premiums to keep the policies in force.  Compl. ¶¶ 21-22.  The fact that the policies were permanent and would insure the Lebbins for life was necessary and material to their purchase.  Compl. ¶ 32.

In furtherance of this strategy, on or about June 25, 1990, the Lebbins formed The Trust and, relying on the representations of Transamerica and its agent, applied for and obtained two second-to-die permanent Universal life insurance policies bearing policy numbers 92324057 and 92387187 ("Policies").  Compl. ¶¶ 24-25.  The Policies had a combined death benefit of $3.2 million.  Compl. ¶ 26.  The Lebbins faithfully paid over $1.5 million in premiums during the life of the Policies honoring their contractual obligations to Transamerica.  Compl. ¶ 34.

Unbeknownst to the Lebbins at the time the Policies were issued, the Policies were based upon outdated and incorrect mortality tables ("CSO Tables") that misrepresented that it was statistically impossible for Mr. and Mrs. Lebbin to live past the age of 100 and guaranteed that no one, including Mr. and Mrs. Lebbin, would live past age 100.  Compl. ¶ 36-46.  Also, as discussed below, the policy terms were ambiguous with respect to the definition and application of certain terms including "Joint Equal Age" and "Maturity Date."  *See* Compl., Exs. B & C.

## C.  Transamerica Notifies the Lebbins of its Intention to Repudiate/Terminate and Issue a Taxable Distribution

In or about 2016, the Lebbins first became aware that Transamerica, despite representing that the Policies provided permanent insurance for the life of Mr. Lebbin, intended to terminate the Policies, with the first policy terminating in July 2017.  Compl. ¶ 56.  Hoping that Transamerica would honor its commitments after having accepted over a million and a half dollars in premiums, the Lebbins wrote to Transamerica, seeking confirmation that Transamerica would continue to provide Mr. Lebbin coverage for the remainder of his life as promised.  Compl. ¶ 57.

On or about August 9, 2016, Transamerica wrote to the Lebbins, informing them that it would not honor its obligations and would instead terminate the Policies and issue the Lebbins a taxable distribution.  Compl. ¶ 58.  Over the course of the next several months, the Lebbins continued to correspond with Transamerica, requesting that they not terminate the Policies, even asking for an Extended Maturity Rider to age 121 similar to those issued by other carriers in the industry.  Compl. ¶ 59.  Transamerica refused these requests and ultimately, after the suit was filed, attempted to issue the Lebbins a taxable distribution.  Compl. ¶ 60.

### III.    PROCEDURAL HISTORY

The Lebbins filed the instant matter in the District of Maryland on July 6, 2017.  DE 1. On October 2, 2017, Transamerica filed a Motion to Transfer Venue which was granted on April 30, 2018 transferring this matter to this Court.  DE 19; DE 24.  Transamerica then filed a Motion to Dismiss which, for the reasons set forth herein, should be dismissed.  DE 43.

### IV.    LEGAL STANDARD

#### A.    Standard on Motion to Dismiss

Transamerica's motion seeks a dismissal of the Lebbins' claims, pursuant to Rule 12(b)(6).  It also asserts that the Lebbins failed to allege fraud with sufficient particularity in contravention to Rule 9(b).

In ruling on a motion to dismiss, a court must view the complaint in the light most favorable to the plaintiff and assume the veracity of well-pleaded factual allegations. *Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010).  "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

A complaint need only state facts sufficient to raise the right to relief above a speculative level. *Gelfound v. Metlife Ins. Co. of Connecticut*, Case No. 13-80479-CIV, 2014 WL 584214, at *1 (S.D. Fla. Feb. 14, 2014). When evaluating a motion to dismiss, courts are "bound by the four corners of the complaint." *Fye v. Broadspire Servs., Inc.*, Case No. 07-CV-60903, 2007 WL 4557152, at *2 (S.D. Fla. Dec. 20, 2007). In the event the complaint proffers "enough fact to raise a reasonable expectation that discovery will reveal evidence" supporting the claim, there is a "plausible" ground for recovery and a Rule 12(b)(6) motion to dismiss should be denied. *Twombly*, 550 U.S. at 556.

"The threshold is exceedingly low for a complaint to survive a motion to dismiss for failure to state a claim upon which relief can be granted." *AXA Equitable Life Insurance Co. v. Infinity Financial Group LLC, et al.*, 608 F.Supp.2d 1349, 1353 (S.D. Fla. 2009). This jurisdiction has made it clear that "a motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted." *Gasper v. Louisiana Stadium*, 577 F.2d 897, 900 (5th Cir. 1978) (citing *Madison v. Purdy*, 410 F.2d 99, 100 (5th Cir. 1969)).

Moreover, when ruling on a motion to dismiss sought under Rule 9(b), "[a] court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999).

## V.   ARGUMENT

### A.   Choice of Law Issues Requiring Discovery Prevent Dismissal at this Stage

Transamerica first argues that the Court should review its motion in accordance with the laws of the Maryland under some circumstance and the laws of Florida under other

circumstances, even though there are numerous factual issues related to determining the appropriate choice of law and there is no factual record.

Courts, including those in this District, routinely observe that it is neither necessary nor appropriate to conduct a choice-of-law analysis at the motion-to-dismiss stage. *See, e.g.*, *Steinberg v. A Analyst Ltd.*, No. 04–60898, 2009 WL 806780, at *7 (S.D.Fla. Mar. 26, 2009) (observing that "it is premature to undertake a choice of law analysis at the motion to dismiss stage of the proceedings"). Understandably, conducting a choice-of-law analysis now would be inappropriate, unnecessary and premature given that such an analysis is highly fact-dependent, and the factual record has not yet been developed. *See, e.g.*, *Calixto v. BASF Const. Chemicals, LLC*, No. 07-60077-CIV, 2008 WL 2490454, at *4 (S.D.Fla. June 19, 2008) (rejecting defendants' argument at motion-to-dismiss stage that the court should determine the state with the "most significant relationship" under Florida choice-of-law rules without a sufficient factual record). Indeed, while Transamerica summarily declares that Maryland law applies to the Lebbins' contracts claims, and Florida law applies to their tort claims, such a declaration is premature as a determination as to whether Maryland or Florida law is applicable here requires the development of a factual record in discovery.

For example, under Maryland law, in resolving a breach of contract claim, courts apply the law of the state in which the contract was made. *Allstate Ins. Co. v. Hart*, 611 A.2d 100, 101 (Md. 1992). Maryland law holds that a contract is made in the state in which the last act necessary to bind the contract occurs. *TIG Ins. Co. v. Monongahela Power Co.*, 58 A.3d 497, 507-08 (Md. Ct. Spec. App. 2002). Maryland law further holds that "[t]he *locus contractu* of an insurance policy is the state in which the policy is delivered and the premiums are paid." *Tig Ins. Co. v. Monongahela Power Co.*, 58 A.3d 497, 164 (Md. Ct. Spec. App. 2012). Here, this

analysis requires the development of a detailed factual record in order to determine when and where the contract was formed.  There is no evidence in the record as to where the relevant events occurred necessary to conduct this inquiry.  Specifically, we do not have any evidence in the record as to where the policy was delivered and where premiums were paid.  Since this case involves a Maryland policy owner, Florida insured and Iowa insurance company, it is just as likely that the policy was formed in Maryland as it was Florida (or elsewhere).  Discovery is necessary to make a proper determination of which forum's laws apply.

Since the Court is unable to make a choice of law determination without a detailed factual record, at a minimum, none of the Lebbins' claims should be dismissed at this stage of the litigation as the Court is unable to determine which forum's laws are applicable.  Consequently, Transamerica's claims should be dismissed without prejudice allowing them to be raised on summary judgment after the development of a factual record.[2]

**B.      The Lebbins' Contract and Tort Claims are Timely**

Transamerica next asserts that the Lebbins' claims are barred by statute of limitation, based upon *its* interpretation of certain terms within the relevant insurance policies. Transamerica's statute of limitations defense should be dismissed because it (1) is not ripe; (2) fails to recognize that the contract claim did not accrue until Transamerica failed to perform/repudiate the contract; and (3) ignores the fact that the alleged wrong was not discoverable until Transamerica notified the Lebbins of their intention to terminate the Policy.

**1.      Transamerica's Affirmative Statute of Limitations Defense is Premature**

Courts in this Circuit disfavor dismissal of a Complaint on statute of limitations grounds as

---

[2] Although the Lebbins maintain that a determination as to which law to apply is premature and impossible to conduct at this stage, the Lebbins have responded to each argument raised by Defendant under the law Defendant is applying as the Lebbins assert that all claims are properly pled at this stage of the litigation.

premature. Indeed, dismissal under Rule 12(b)(6) based on the statute of limitations is only proper if it is apparent from the face of the complaint that the claim is time barred. *See State Farm Mut. Auto. Ins. Co. v. Kugler*, Civ. No. 11–80051, 2011 WL 4389915 at *13 (S.D. Fla. Sept. 21, 2011); *Bearse v. Main Street Invs.*, 220 F. Supp. 2d 1338, 1340 (M.D. Fla. 2002) ("the question of when fraud is discovered … cannot be decided on a motion to dismiss … unless the pleadings contain facts which demonstrate both a lack of diligence and a failure to file the complaint within four years from the aggrieved party's discovery of the fraud"); *Pavlisin v. Corr. Corp. of Am.*, Civ. No. 08-298, 2009 WL 1043918 at *4 (M.D. Fla. Apr. 17, 2009) (denying motion to dismiss when it was not clear from the complaint's face that causes of action were time barred).

Here, Transamerica argues that the Lebbins' contract and tort claims are time-barred pursuant to Maryland's three-year statute of limitations because Plaintiff should have "discovered" the alleged wrong at the time of Policy issuance in 1990. However, Transamerica's argument fails to consider that such an inquiry requires factual discovery and should be dismissed on this ground alone.

## 2. The Lebbins' Contract Claims Did Not Accrue Until Transamerica Repudiated the Policies

Under Maryland law, a cause of action cannot accrue until all the elements are present, including damages. *See Goldstein v. Potomac Elec. Power Co.*, 404 A.2d 1064 (Md. 1979). *Baker, Watts & Co. v. Miles & Stockbridge*, 620 A.2d 356, 377 (Md. App.1993). In order for a cause of action for breach of contract to exist, a party must show contractual obligation, breach of that obligation, and damages. *See, e.g., Kumar v. Dhanda*, 17 A.3d 744, 749 (Md. Ct. Spec. App. 2011). The statute of limitations on a contract action begins to run from the **date of the alleged breach**. *Jones v. Hyatt Insurance Agency, Inc, 741 A.2d 1099, 648 (Md. 1999)*(emphasis added); *Federalsburg v. Allied Con.*, 275 Md. 151, 157, 338 A.2d 275, 280, *cert.*

*denied*, 423 U.S. 1017, 96 S.Ct. 452, 46 L.Ed.2d 389 (1975) ("In contract cases, the general rule is that the period of limitations begins to run from the date of the breach, for it is then that the cause of action accrues and becomes enforceable."). Furthermore, the stated repudiation of a parties' contractual obligations may constitute a breach giving rise to cause of action for breach of contract. *Curry v. Trustmark Ins. Co.*, No. 13-1995 (4th Cir. Feb. 6, 2015).

Transamerica's statute of limitations defense is based upon the incorrect assertion that the Lebbins' cause of action accrued when the Policies were issued in 1990. This argument fails because the Lebbins' cause of action did not accrue until Transamerica actually breached the parties' agreement. The Lebbins allege that the date of the breach was in 2016 when Transamerica first informed the Lebbins of its intention to terminate their policies, thereby repudiating their contractual obligations. Compl. ¶ 56. Prior to this time, Transamerica had not breached the contract and appeared to be performing by accepting premiums, sending annual statements and administering the Policies. Nowhere in the Complaint is it alleged that Transamerica had breached the contract before this time. As soon as this breach occurred, the Lebbins promptly filed suit in 2017 well within Maryland's three-year statute of limitations. DE 1. Consequently, given that the Lebbins' cause of action for breach is based, *inter alia*, upon Transamerica's stated repudiation of its intention to insure the Lebbins for life in 2016, it seems an unremarkable proposition that his action for alleged breach of contract occurred any time before then. *Curry*, *supra*.

### 3. The Lebbins' Tort Claims Were Tolled by Maryland's Discovery Rule

Transamerica's statute of limitations defense also overlooks or simply ignores Maryland's discovery rule (assuming for the moment that Maryland law applies, even though it is not yet possible to make that determination). It is well-known that Maryland applies a

discovery rule.  Under this rule, a "cause of action accrues when the claimant knew or reasonably should have known of the wrong." *Poffenberger v. Risser*, 431A.2d 677, 80 (Md. 1981). Specifically, a cause of action accrues when:

> (1) the plaintiff had knowledge of circumstances that would have led a reasonable person in the same circumstances to undertake an investigation; and (2) the investigation, if pursued with reasonable diligence, would have led to knowledge of the alleged wrong.

*Fischer v. Viacom Intern., Inc.*, 115 F. Supp. 2d 535, 539 (D. Md. 2000) *Accord Cooper v. Berkshire Life Ins. Co.*, 810 A.2d 1045, 1071 (Md. App. 2002).

Here, prior to 2016, Transamerica failed to give any indication that the Policies were not permanent.  From the sales process through the administration of the Policies, Transamerica and its agents continuously misrepresented to the Lebbins that the Policies would insure them for life.  There is nothing alleged in the Complaint to the contrary.  While Transamerica suggests that the Lebbins should have been on notice in 1990, such an inquiry is not for the Court to decide but a question for the trier of fact based upon a factual record.  Maryland law is clear that "[t]he court has the exclusive power to determine the manner of operation of the discovery rule," but a trier of fact determines questions of fact on which a limitations defense turns.  *Cooper*, 810 at 88 quoting *Pennwalt Corp. v. Nasios*, 314 Md. 433, 449-50, 550 A.2d 1155 (1988).

In *Cooper*, the Maryland Court of Special Appeals declined to grant summary judgment on the defendant's statute of limitations defense because application of the discovery rule contains elements that require a trier of fact.  The Court specifically stated that "the law is clear that whether a reasonably prudent person should undertake a further investigation is a matter about which reasonable minds can differ and is therefore a question of fact precluding summary judgment.  *Cooper*, 810 A.2d at 88 *citing Baysinger v. Schmid Prods. Co.*, 307 Md. 361, 367-68514 A.2d 1 (1986) ("Whether a reasonably prudent person should [under the circumstances]

have undertaken a further investigation is a matter about which reasonable minds could differ, and it was therefore inappropriate for resolution by summary judgment").  Here, Transamerica not only wants the Court to undermine the role of the trier of fact and dismiss the Lebbins' claims, but it wants the Court to do so without any factual record necessary to determine whether the statute of limitations defense is applicable to the instant matter.  Consequently, this argument should be dismissed.

### C.     The Lebbins' Fraud and Negligent Misrepresentation Claims are not Barred by the Statue of Repose

Defendant asserts that Plaintiff's claim is barred by Florida's statute of repose.  The Statute of Repose for fraud claims in Florida provides that "an action for fraud under § 95.11(3) must be begun within 12 years after the date of the commission of the alleged fraud, regardless of the date the fraud was or should have been discovered."  Fla. Stat. § 95.031(2)(a). Florida's Statute of Repose, like all similar statutes, "bar[s] actions by setting a time limit within which an action must be filed as measured from a specified act, after which time the cause of action is extinguished." *Hepp v. Paul Revere Life Ins. Co.*, 120 F. Supp. 3d 1328 (M.D. Fla. 2015) *quoting Hess v. Philip Morris USA, Inc.*, 175 So.3d 687 (Fla. 2015).  "That limit is measured not from the date on which the claim accrues but instead from the date of the last culpable act or omission of the defendant.  However, a jury is needed to determine 'the last culpable act or omission of the defendant,' if any, before determining whether Plaintiff's claim is barred by the statute of repose." *Hepp*, 120 F. Supp. 3d at 1348 *citing CTS Corp. v. Waldburger*, 134 S.Ct. 2175, 2182, 189 L.Ed.2d 62 (2014)).

Applying the law here, the Lebbins have pleaded causes of action for fraud and negligent misrepresentation for which relief may be granted.  Transamerica claims that the "last culpable act" occurred outside of the repose period; however, the law is clear that determining when "the

last culpable act or omission of the Defendant occurred" occurred is a question for the jury after conducting a factual inquiry.  As pled, the Lebbins' claims survive Florida's statute of repose. For example, according to the Complaint, the Lebbins paid premiums on the Policies for over two decades.  Each year when the Lebbins were sent Statements of Policy values and invoices, they paid the premiums.  The entire time, Transamerica fraudulently omitted its intent to terminate the Policies.  Each time the Lebbins made premium payments, Transamerica failed to inform the Lebbins that their insurance coverage was not permanent or "for life." Transamerica's continual omissions every year form a continuing fraud to the present that would not trigger the statue of repose until the date of its last culpable act.  *Id.*

### D.    Count One Should Not Be Dismissed as the Policy Language is Ambiguous

Transamerica is incorrect in asserting that Count One for Breach of Contract should be dismissed because the Lebbins do not identify a specific contractual provision that it breached. To the contrary, Count One properly sets forth a cause of action for breach of contract. Because the contract is ambiguous as to its Maturity Date, as discussed in section F below, the Lebbins are not required to point to a specific contractual provision that Transamerica breached in order to state a claim for breach of contract.

"Where a contract is reasonably or fairly susceptible of different constructions, it is ambiguous, and because interpretation of ambiguous contracts potentially involves questions of fact, dismissal under Rule 12(b)(6) is inappropriate."  *Ventana Hotels & Resorts, LLC v. Habana Libre Hotel, LLC*, No. 0622993-CIV-MCALILEY, 2007 WL 2021940, at *2 (S.D. Fla. July 11, 2007) (denying Defendant's motion to dismiss Plaintiff's breach of contract claim because of "the disparity in the parties' interpretations of [the contract provisions] and the factual questions surrounding their intentions) (internal citations omitted)."  The construction of

ambiguous contract provisions is a factual determination that precludes dismissal on a motion for failure to state a claim." *Id. See also Managed Care Sols.*, *Inc. v. Cmty. Health Sys., Inc.*, No. 10-60170-CIV, 2011 WL 6024572, at *6 (S.D. Fla. Dec. 2, 2011) ("The contract section in dispute is reasonably susceptible to more than one interpretation, and thus . . . the motion to dismiss on this basis should be denied."); *Larach v. Standard Chartered Bank Int'l (Americas) Ltd.*, 724 F. Supp. 2d 1228, 1239 (S.D. Fla. 2010) (denying a motion to dismiss because the Plaintiff had "sufficiently alleged the required elements for claims of breach of contract" and the differing interpretations of the contract was not yet ripe for ruling). Therefore, because the contractual provision in dispute is ambiguous, Transamerica's motion to dismiss should be denied as the interpretation of the contract is not yet ripe for a ruling.

**E.      The Lebbins Fraud and Negligent Misrepresentation Claims are Pled with
Sufficient Particularity**

Under Rule 9(b), a party alleging fraud or mistake "must state with particularity the circumstances constituting the fraud or mistake." Fed. R. Civ. P. 9(b). "Rule 9(b) is satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008) (internal citations omitted). "[I]t is sufficient to plead the who, what, when, where, and how of the allegedly false statements and then allege generally that those statements were made with the requisite intent. *Id. See also Fed. Deposit Ins. Corp. for First Nat'l Bank of Nevada v. Lazcano*, No. 08-21769, 2009 WL 10699886, at *2 (S.D. Fla. Jan. 6,

- 13 -

2009) ("[T]he rule requires that a plaintiff plead all the elements of the first paragraph of a newspaper story: the who, what, when, where and how.").[3]

"Rule 9(b) must be read in conjunction with Rule 8(a) [of the Federal Rules of Civil Procedure], which requires a plaintiff to plead only a short, plain statement of the grounds upon which he is entitled to relief." *See MeterLogic, Inc. v. Copier Solutions, Inc.*, 126 F. Supp. 2d 1346, 1360 (S.D. Fla. 2000) (Gold, J.) (denying motion to dismiss where fraud allegation contained the "who, what where and when" of the alleged fraud, and sufficiently put defendant on notice of the claim) (internal citations omitted).

Here, the Complaint clearly meets the requirements of Rule 9.  Specifically, the Complaint sets forth the following specific and detailed factual allegations:

- In 1990, the Lebbins were approached by Jack Kaye, an agent of Transamerica, and presented with a tax and estate planning strategy that involved purchasing two of Transamerica's permanent universal life insurance policies.  Compl. ¶ 21.
- The policies were marketed, sold and represented to the Lebbins by Jack Kaye and Transamerica as permanent coverage that would insure the Lebbins for life and guarantee their joint estate income tax-free liquid assets with which to pay estate taxes.  Compl. ¶ 22.
- Transamerica willfully and intentionally ignored information that the 1980 CSO Table, which had a terminal age of 100, was not an accurate reflection of the actual life expectancies of customers and continued to represent that the permanent policies would insure them for life. Compl. ¶ 40-45.
- Although the Lebbins were interested in purchasing individual policies that would pay a death benefit upon the death of either insured, Jack Kaye, Transamerica's agent, represented and directed the Lebbins to purchase second-to-die policies because he said that this type of policy would be more suitable for the Lebbins' needs, suggesting they would be less expensive and "a better deal." Compl. ¶ 27.

---

[3] "Allegations of date, time, or place satisfy the requirement of Rule 9(b) that the circumstances of the fraud be alleged with particularity, but alternative means are also available to satisfy the rule." *Simpson v. FWM Labs., Inc.*, No. 09-61771-CIV, 2010 WL 1257714, at *4 (S.D. Fla. Mar. 29, 2010); *see also Colonial Penn Ins. Co. v. Value Rent–A–Car, Inc.*, 814 F. Supp. 1084 (S.D.Fla. 1992) (finding particularity satisfied when plaintiffs provided general time frame, described scheme in detail, and included specific allegations about related correspondence).

- In furtherance of the strategy proposed by Transamerica, the Lebbins formed the Lebbin-Spector Family Trust in Maryland on June 25, 1990, naming their children as Trustees. Compl. ¶ 24.
- Relying on the representations of Transamerica and Jack Kaye, the Lebbins applied for and obtained two second-to-die permanent universal life insurance policies. Compl. ¶ 25.
- The representations concerning the suitability and permanency of the Policies were material to the Lebbins' purchase of same. Compl. ¶ 32.
- The Lebbins have paid over $1.5 million in premiums and have honored their contractual obligations. Compl. ¶ 34-35.
- Transamerica notified the Lebbins that they would be terminating the Policies, with the first policy terminating in July 2017. Compl. ¶ 56.

There is nothing vague or imprecise about these factual allegations.  Indeed, the Complaint contains the *who* (i.e., Transamerica and Jack Kaye as its agent), *what* (i.e., misrepresented that the insurance policies were permanent and provided coverage for life), *where* (i.e., conversations with Transamerica's agent Jack Kaye in Florida) and *when* (i.e., throughout 1990 as evidenced by the policies' date of issue in Exhibits B and C of the Complaint), and sufficiently puts Transamerica on notice of the Lebbins' fraud claim.  Any claim by Transamerica to the contrary is untenable.  Consequently, Transamerica's argument that the Complaint's allegations are vague and fail to identify specifics is baseless and must be rejected.

### F.    Reasonable Reliance is an Issue for the Jury

It is well-settled that that the question of reasonable reliance is left to the trier of fact. *Romo v. Amedex Ins. Co.*, 930 So.2d 643, 653 (Fla. Dist. Ct. App. 2006) *citing Williams v. Bear Stearns Co.*, 725 So.2d 397 (Fla. 5th DCA 1998) (stating that issue of reasonable reliance on fraudulent representation is to be decided by the jury).  While Defendant argues that the Lebbins' reliance on its fraudulent misrepresentations are unreasonable as a matter of law because they are contradicted by the express terms of the Policies, this argument is misplaced. Here, Transamerica fails to recognize that reliance cannot be determined as a matter of law because the alleged

misrepresentations involved essential terms of the Policies; the interpretation of which are disputed.

First, the misrepresentations in the instant case involved essential terms of the contract. *See Begualg Inv. Mgmt., Inc. v. Four Seasons Hotel Ltd.*, No. 10-22153-CIV, 2012 WL 1155128, at *6–7 (S.D. Fla. Apr. 5, 2012) ("[While] [a] party cannot recover in fraud for alleged oral misrepresentations that are adequately covered or expressly contradicted in a later written contract . . . where misrepresentation of the character or essential terms of a proposed contract occurs, assent to the contract is impossible. In such a case there is no contract at all.") (internal citations omitted).  The date at which the Policies would terminate is an essential term of the contract.  Transamerica marketed and continues to market its Universal life insurance as "a type of *permanent life insurance that provides coverage for life*."  Compl. Exhibit A. (emphasis added).  Transamerica, through its agent Jack Kaye, knowingly and falsely misrepresented to the Lebbins that the Policies were *permanent* and would provide *coverage for life*.

Second, the interpretation of the policies is disputed and, therefore, not susceptible to consideration on a motion to dismiss. *See Drilling Consultants, Inc. v. First Montauk Sec. Corp.*, 806 F. Supp. 2d 1228, 1237 (M.D. Fla. 2011) (denying a motion to dismiss because the policy illustrations that seemingly contradict the alleged misrepresentations were disputed and, thus, not susceptible to consideration on a motion to dismiss); *Whitney Nat. Bank v. SDC Communities, Inc.*, No. 809CV01788EAKTBM, 2010 WL 1270266, at *3 (M.D. Fla. Apr. 1, 2010) (denying a motion to dismiss a fraud claim because the express language that contradicts the alleged oral misrepresentations is in controversy and interpreting the contract is inappropriate the motion to dismiss stage).  Contrary to Defendant's assertion, the Lebbins did not rely on oral

representations *in lieu* of reading the Policies.  Regardless of whether the Lebbins read the Policies, an essential term of the Policies, the Maturity Date, was ambiguous.

Nowhere in the Policy does it clearly state when the policy terminates.  On page 7 of Exhibits A and B to Plaintiff's Motion to Dismiss, the Policies contain definitions describing certain terms, including "Joint Equal Age."  According to the definition, "Joint Equal Age" means "the adjusted age of the Joint Insureds which reflects a risk that would be equivalent to two people of the same age, class of risk and smoking status."  There is no mention in the Policies of what is adjusted and how such adjustment is made to determine the Joint Equal Age. While the Policies do define the "Maturity Date" as "the policy anniversary nearest the Insureds' Joint Equal Age 100," it's unclear from the face of the Policies when the Insureds would reach the Joint Equal Age 100 and whether an adjustment would be applied by Transamerica to extend coverage beyond age 100.  Moreover, the Policies do not provide an actual Maturity Date anywhere in the Policies, despite the fact that both of the Insureds' birth dates and ages are listed on the application, making it seemingly simple for Transamerica to calculate the "adjusted age" necessary for determining the exact Maturity Date and provide it to the Insureds either on the face of the Policies or during the application process.

Transamerica represented that the Policies were a type of *permanent* life insurance that provides *coverage for life*.  Even with reading through the entirety of the Policies, it would not be clear to anyone outside of Transamerica that the Policies were not permanent.  Therefore, dismissal is premature at this stage of the proceedings.

### G.     It is Premature to Address the Lebbins' Consumer Protection Claim

Transamerica seeks to dismiss the Lebbins' claim under the Maryland Consumer Protection Act, Md. Code, Comm. Law, § 13-101 *et seq*. (the "MCPA") because it purportedly

does not apply to the transaction at bar, does not apply to sales made outside of the state of Maryland and it has not been pled with particularity.  For the reasons set forth in section E, the Lebbins have clearly pled fraud with sufficient particularity necessary to give rise to liability under the MCPA.  Furthermore, the question of whether this transaction is covered by the MCPA due to its nature or where the sales process occurred requires the creation of a factual record that will allow the Court to make this determination.  To do so otherwise would be premature and improper.

**H.    The Lebbins' Unjust Enrichment Claim is Properly Pled**

"[A] a party may plead in the alternative for relief under an express contract and for unjust enrichment . . . .  [I]t is not upon the allegation of the existence of a contract, but upon a showing that an express contract exists that the unjust enrichment count fails. Until an express contract is proven, a motion to dismiss a claim for unjust enrichment on these grounds is premature."  *Silver Creek Farms, LLC v. Fullington*, No. 16-80353-CIV, 2018 WL 1990522, at *3-4 (S.D. Fla. Feb. 15, 2018) (internal citations omitted). *See also Martorella v. Deutsche Bank Nat. Tr. Co.*, 931 F. Supp. 2d 1218, 1227–28 (S.D. Fla. 2013); Restatement (Third) of Restitution & Unjust Enrichment § 2(2) cmt. c. ("Restitution claims . . . arise in a contractual context, but they occur at the margins, when a valuable performance has been rendered under a contract that is invalid, or subject to avoidance, or otherwise ineffective to regulate the parties' obligations.").

In *Martorella*, the Defendants moved to dismiss Plaintiff's unjust enrichment claim on the basis that an express contract existed, and no party contested the existence of the contract. 931 F. Supp. 2d at 1227.  The court denied the motion to dismiss as premature and held that the Plaintiff could "maintain an equitable unjust enrichment claim in the alternative to her legal claims against Defendants" until an express contract was proven.  *Id*. at 1228.  The court

- 18 -

reasoned that "it is not upon the allegation of the existence of a contract, but upon a showing that an express contract exists that the unjust enrichment count fails." *Id.*  The court also noted that "Federal Rules of Civil Procedure 8(a) and 8(d)(2) specifically authorize a plaintiff to plead causes of action in the alternative." *Id.*[4]  As in *Martorella*, despite Transamerica's contention that an express contract exists, a dismissal of the unjust enrichment claim at this stage of the proceeding is premature because an express contract has not been proven to exist and the law is clear that alternative pleading is allowed.

## I.      The Lebbins' Claims for Declaratory Judgment, Rescission and Reformation are Properly Pled

Transamerica's final argument on its motion is a catch-all effort to dismiss the remaining counts of the Complaint without any valid basis for doing so.  Transamerica argues that these claims are duplicative, that the rescission claim is moot, and that the reformation claim did not properly allege a mistake.  All of these arguments are mistaken.

First, none of these claims are duplicative.  The Lebbins have raised separate and distinct claims.  Moreover, even if they were deemed to be "duplicative," that is not a basis for dismissal, as the Lebbins are permitted to plead in the alternative.  Fed.R.Civ.P. 8; *Johnson v. GEICO Gen. Ins.*, No. 08-CV-80740, 2008 WL 4793616, at *3 (S.D. Fla. Nov. 3, 2008) (denying motion to dismiss declaratory judgment claim and reasoning that "the fact that Plaintiff could have simply brought an action for breach of contract does not prevent him from also seeking a declaratory judgment").

---

[4] *See also Kunzelmann v. Wells Fargo Bank, N.A.*, No. 9:11-CV-81373-DMM, 2012 WL 2003337, at *6 (S.D. Fla. June 4, 2012) (denying Defendants' motion to dismiss as premature, despite Defendants' contention that Plaintiff's claim for unjust enrichment fails as a matter of law since it is barred by the existence of a contract, because Federal Rule of Civil Procedure 8(d) allows pleading in the alternative even if the theories are inconsistent and Plaintiff may not recover on both theories).

Second, the rescission claim is not moot as Plaintiffs have properly alleged the existence of a valid contract.  Transamerica argues that the claim is moot because it unilaterally terminated the contract.  Transamerica cannot unilaterally declare the contract terminated and then seek to benefit from their improper termination by declaring the issues raised by the Lebbins moot, especially in light of the fact that the Lebbins have alleged that termination was improper.

Finally, Transamerica's argument that the Lebbins reformation claim fails because they did not allege a mistake, mutual or unilateral, also fails.  The Lebbins allege that reformation is warranted because of the mutual and/or unilateral mistakes contained in the Policies, coupled with the fraud/inequitable conduct of Transamerica.  At the pleading stage, a claim for reformation must sufficiently allege "(1) the existence of a written instrument; (2) fraud or inequitable conduct in the written instruments; and (3) that as a result, the written instruments do not accurately express the intent of the parties."  *Abromats v. Abromats*, Case No. 16-cv-60653-BLOOM/Valle (S.D. Fla. Nov. 17, 2016).  Here, the Lebbins have done just that.  The Complaint alleges (1) the existence of the Policies; (2) that, inter alia, the Policies improperly utilized the wrong CSO Tables; and (3) that, as a result, the Policies did not accurately reflect the parties' intention to insure the Lebbins for life.  Consequently, the Lebbins have pled valid causes of action, and Transamerica's motion to dismiss these Counts should be denied.

## VI.    <u>CONCLUSION</u>

For the reasons stated above, Transamerica's motion to dismiss should be denied.[5]

---

[5] Alternatively, to the extent the Court finds that the Complaint is deficient, the Lebbins request that this Court grant it leave to file an amended complaint to cure any deficiencies. *See Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002).

June 22, 2018

By: /s/ James S. Bainbridge
James S. Bainbridge, Esq.
PA Attorney ID # 82607
jsb@thebainbridgelawfirm.com
THE BAINBRIDGE LAW FIRM, LLC
1250 Germantown Pike, Suite 203
Plymouth Meeting, PA 19462
Telephone: (484) 690-4542
Facsimile: (888) 914-32329
*Attorneys for Plaintiffs*

By: /s/ Emily J. Baxter
Michael W. Marcil, Esq.
Florida Bar No. 91723
mmarcil@gunster.com
Emily J. Baxter, Esq.
Florida Bar No.: 1004117
ebaxter@gunster.com
GUNSTER, YOAKLEY & STEWART, P.A.
777 South Flagler Drive, Suite 500 East
West Palm Beach, FL  33401
Telephone: (561) 650-0532
Facsimile: (561) 655-5677
*Local Counsel for Plaintiffs*